WILLARD G. NASH *vs.* COMMONWEALTH & others.

Suffolk.   March 18, 1902. — June 18, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Commonwealth.   Waterworks.*

In order to enforce a claim for the price of materials under Pub. Sts. c. 16, § 64, against funds retained from a contractor by the Commonwealth, it is not necessary to give notice before furnishing the materials of an intention to claim a lien, and none of the requirements of c. 191, in regard to enforcing mechanics' liens, have any application.

A contract between the Commonwealth and a contractor for the construction of sections five and six of the Nashua Aqueduct provided that the Commonwealth should withhold from the contractor sufficient moneys to cover " all claims for labor or materials for the work, notice of which, signed and sworn to by the claimants," should have been filed in the office of the metropolitan water board. There were two separate contracts, exactly alike in their terms, one for each section.   On a petition by one who had furnished to a subcontractor cement which was used partly on section five and partly on section six, seeking the benefit of this reserved fund, it appeared, that the petitioner had filed with the metropolitan water board a sworn notice of a claim for the price of all the cement furnished by him for both sections " to be used in the construction of the aqueduct and waterworks of the Commonwealth, under the direction of said board, and especially for section five thereof " declaring that the petitioner had learned and believed that all of the cement was actually used in the construction of the waterworks, and that the Commonwealth had had the use and benefit of all the material, and that he therefore claimed of the Commonwealth the full sum named by virtue of a certain section of the " Contract for Building Section 5 of the Nashua Aqueduct," " and by virtue of all other sections thereof, and all other laws, acts, contracts and agreements pertaining to said aqueduct and water works, and material to his said claim." *Held,* that this notice did not confine the petitioner's claim to the price of the cement furnished for section five, but was broad enough to cover all the cement furnished for both sections.

A contractor made a contract with the Commonwealth for the construction of certain sections of an aqueduct containing a provision that the Commonwealth should withhold from the contractor sufficient moneys to cover all claims for labor and material duly presented.   A subcontractor failed, and abandoned the portion of the work he had undertaken, and the principal contractor settled with him allowing him in full for the materials on hand.   Thereafter one who had furnished the subcontractor with cement for the work filed a petition seeking the benefit of the fund reserved in the hands of the Commonwealth.   *Held,* that the petition was not filed too late, there having been no unreasonable delay ; that the principal contractor knew the provision in his contract and by the exercise of reasonable diligence might have known that the subcontractor had bought cement from the petitioner which was delivered and not paid for, and if under the circumstances he chose to settle with the subcontractor in full, he must be held to have done it at his own risk.

A contractor made a contract with the Commonwealth for the construction of certain sections of an aqueduct containing a provision that the Commonwealth should withhold from the contractor sufficient moneys to cover all claims for labor and materials duly presented. On a petition by one who had furnished cement to a subcontractor, seeking the benefit of the fund reserved in the hands of the Commonwealth, it appeared, that the petitioner sold all the cement to the subcontractor and delivered it at the site of the work, and that when more than half of the cement had been used the subcontractor failed and abandoned the portion of the work he had undertaken. The principal contractor under his contract with the subcontractor had the right "by contract or otherwise" as he might determine, to complete the work covered by the contract and charge the expense to the subcontractor, and to use therefor such of the subcontractor's "materials, animals, machinery, implements and tools of every description" as might be found upon the line of the work. The principal contractor settled with the subcontractor and made a contract with a construction company to complete the work. The principal contractor testified that he bought the cement and other materials left on the line of the work and received from the subcontractor a bill of sale, that he paid the subcontractor and the construction company in turn paid him, and that he immediately transferred the property to the construction company and passed over to it the bill of sale. All of the cement was used in the construction of the aqueduct. *Held,* that the petitioner was entitled to recover for the price of all the cement and not merely for the portion used by the subcontractor before he failed ; that the transfer of the remaining cement, although in the form of a sale, was in substance a taking possession of the cement under the contract and a use of it thereunder.

PETITION, filed December 20, 1897, to enforce a claim under Pub. Sts. c. 16, § 64, (R. L. c. 6, § 77,) held to be sustainable in a decision reported in 174 Mass. 335, for the price of certain cement furnished by the petitioner for sections five and six of the Nashua aqueduct built for the Commonwealth under a contract between the metropolitan water board and the respondent Casparis, who sublet a portion of the work to the respondents Smith and Burden, to whom the petitioner sold the cement.

After the decision above referred to, overruling demurrers of the respondents, the case was tried in the Superior Court in accordance with Pub. Sts. c. 195, § 3, (R. L. c. 201, § 2,) before *Hopkins, Bell, & Lawton,* JJ., who found for the petitioner and assessed damages in the sum of $4,254.68. The decree ordered judgment to be entered for the petitioner against the Commonwealth for the sum named with costs; and the respondent Casparis appealed.

Article 19 of the contract made by Casparis with the Commonwealth was as follows: "Art. XIX. The Commonwealth may keep any moneys which would otherwise be payable here-

under and apply the same to the payment of any expenses, losses or damages incurred by the Commonwealth and determined as aforesaid, and may retain until all claims are settled so much of such moneys as the board shall be of opinion will be required to settle all claims against the Commonwealth, its officers or agents, specified in Article XV., and all claims for labor or materials for the work, notice of which, signed and sworn to by the claimants, shall have been filed in the office of the board, or may make such settlements and apply such moneys thereto."

On June 24, 1896, Casparis sublet a portion of the work to Smith and Burden subject to the provisions of his contract with the Commonwealth. In the following December, after the delivery of the cement by the petitioner to Smith and Burden, Smith and Burden became insolvent and abandoned the work. It was completed by Casparis through the Standard Construction Company, to whom he sublet the same portion of the work in the following February. Part of the cement furnished by the plaintiff was used by Smith and Burden and part by Casparis or the Standard Construction Company.

The contract between the Commonwealth and Casparis provided that if the work should be abandoned, or if the contract should be sublet, the water board might complete the work at the expense of the contractor, and might use therefor such materials as might be found upon the line of the work.

On May 17, 1897, the plaintiff filed in the office of the metropolitan water board the notice of his claim as required by article 19 of the contract.

The notice was addressed to the metropolitan water board, was signed and sworn to by the petitioner, and read as follows :

" Willard G. Nash, a citizen of said Commonwealth, and a dealer in cement and other building materials at No. 220 State street, Boston, Mass., respectfully informs and notifies your Honorable Board that between July 8, 1896, and October 15, 1896, he furnished and delivered to Smith & Burden, at Berlin, Mass., and at Northboro, Mass., certain cement of the value of three thousand three hundred and seventy-four dollars and six cents ($3,374.06), to be used in the construction of the aqueduct and water works of the Commonwealth, under the direction of said

Board, and especially for Section Five (5) thereof, which section one Casparis contracted to build for said Commonwealth and made some arrangement with said Smith & Burden to procure said material, the details of which arrangement are unknown to your informant.

"Said cement, and the price, place and time of delivery of the items thereof, are fully specified in the statement hereto annexed. Said Smith & Burden have paid no part of said three thousand three hundred and seventy-four dollars and six cents ($3,374.06), have become insolvent, and they and the said Casparis neglect to pay the same, and the said sum is wholly unpaid.

" Your informant has learned and believes that all said cement was actually used by said Smith & Burden, and said Casparis, in the construction of said water works, and that the said Commonwealth has had the use and benefit of all said material.

" He therefore claims of the Commonwealth aforesaid the sum of three thousand three hundred and seventy-four dollars and six cents ($3,374.06) for said cement, by virtue of Section 19 of the ' Contract for Building Section 5 of the Nashua Aqueduct,' entered into by said Board in behalf of the Commonwealth with said Casparis, and by virtue of all other sections thereof, and all other laws, acts, contracts and agreements pertaining to said aqueduct and water works, and material to his said claim."

. In fact there were two separate contracts between the Commonwealth and Casparis, exactly alike in their terms, one for section five and the other for section six. Part of the cement was furnished under each of these contracts, and the price for the whole amount furnished under both was the sum of $3,374.06 named in the above notice.

Pub. Sts. c. 16, § 64, for which R. L. c. 6, § 77, is now substituted, reads as follows: " When public buildings or other public works upon which liens might attach for labor or materials, if they belonged to private persons, are about to be constructed or repaired for the commonwealth by contract, the officers or agents contracting in behalf of the commonwealth shall obtain sufficient security, by bond or otherwise, for payment by the contractor and by all sub-contractors for all labor performed or furnished and for all materials used in such construction or repair."

*G. M. Palmer*, for the respondent Casparis.

*F. C. Nash*, for the petitioner.

HAMMOND, J.    After a rescript from this court overruling certain demurrers (174 Mass. 335), this case was heard upon its merits by three judges of the Superior Court, who found for the petitioner in the sum of $4,254.68; and on April 9, 1901, a final decree was there entered for the petitioner for that amount and costs.    The case is now before us upon appeals by the respondent Casparis from this finding and from the decree.

The first objection made by the appellant is that the petitioner before selling the cement to Smith and Burden gave no notice that he intended to claim a lien.    In support of this objection, the appellant argues that the statute was passed for the protection and convenience of the Commonwealth; that it is a part of the laws relating to finance; that in 1878, when the statute was first passed, it was probably thought that possibly public liens might be maintained against public works, or at least that claims of such a nature might be made; that the purpose of the statute was to protect the Commonwealth against such claims and to provide it with security against possible loss; and that there is no indication in the statute or in the context that it was intended to furnish an absolute guaranty of payment for all material used in public works.    The appellant insists that from this view of the statute it follows that in order to prevail the petitioner must show that he gave notice, as would have been necessary if the aqueduct had belonged to a private person.

We cannot assent to this general view of the purpose of the statute.    It first appeared as St. 1878, c. 209, entitled " An Act to insure payment of wages earned and for materials used in constructing public buildings and public works."    It speaks of " public buildings or other public works . . . upon which liens might attach for labor or materials if they belonged to private persons," and it provides that it shall be the duty of the officers contracting in behalf of the Commonwealth to provide security for the payment of certain laborers and materialmen.    The title would seem to indicate that the purpose of the act was not to protect the Commonwealth as a property owner against lienors, but to provide a way in which laborers and materialmen in certain cases could be made more secure as to

their pay, and the language of the act implies that the lien laws, as then existing, were not applicable to public works, and hence the remedy therein provided.

Even if it be assumed that the statute provides only for the payment of such claims as could have been enforced against the property of a private person, it by no means follows that the lienor should have taken the steps required by Pub. Sts. c. 191, to fix the lien as in the case of private ownership. Under the last named statute the materialman before furnishing the materials must give notice to the owner (if he is not the purchaser) that he intends to claim a lien, and within thirty days from the time he ceases to furnish them must file the certificate required by § 16, and within ninety days must begin a suit for enforcing the lien. The mere recital of these steps is sufficient· to show that it was not intended that they all should apply. Indeed none of them applies. By virtue of the contract with Smith and Burden the petitioner was bound to furnish cement for the work, and if the property had been that of a private owner he stood in a position to make his lien complete. It was possible for him to take the steps, namely, to give the notice before furnishing the cement, to file the certificate and to begin the suit within the required time. A lien might therefore have attached. When the contract to furnish the cement was made, the time had come when the petitioner had it in his power by his own act to take the necessary steps if the property was that of a private owner to attach a lien. He was no more required to take the first step than the second or third. By virtue of his contract he was placed where the lien might attach for materials furnished, and the public work was of such a kind that if the owner had been a private person a lien might attach; and even if the statute covers only those claims which by the act of the lienor may as against the property of a private person finally ripen into a lien, it is plain that the claim of the petitioner is within that class. There was no need for notice before the materials were furnished that he intended to claim a lien.

The notice filed in the office of the water board in compliance with article 19 of the contracts was sufficient to cover all the cement furnished by the petitioner. Casparis had contracted to build sections five and six by two separate contracts, both of

which he had sublet to Smith and Burden, to whom, while engaged upon the work under their contracts with Casparis, the petitioner sold the cement. The notice describes the cement furnished to Smith and Burden as of the value of $3,374.06, (which in fact was the price for the whole amount furnished,) to be used in the construction of the aqueduct and waterworks of the Commonwealth under the direction of said board, and especially for section five thereof; and it sets forth a claim upon the Commonwealth for the payment of the whole sum by virtue of section 19 of the contract for building section five of the aqueduct entered into by Casparis and by virtue of all other sections thereof, "and all other laws, acts, contracts and agreements pertaining to said aqueduct and water works, and material to his said claim." In fine, it is a claim to be paid for all the cement furnished upon the aqueduct by virtue of any contract, law or agreement material thereto.

It is strongly urged by the appellant that the petitioner has been guilty of laches. We think however that there has been no delay which, as matter of law, should bar the petitioner. Casparis knew the nature of the contracts between himself and the Commonwealth, and between himself and Smith and Burden, and in the exercise of reasonable diligence might have known that the latter had bought cement from the petitioner which had been delivered at the site of the work and had not been paid for. He must be held to have known that whoever had furnished to Smith and Burden materials for which payment had not been made might make a claim to be paid out of the fund reserved by the Commonwealth for the laborers and materialmen under the contracts. If under the circumstances disclosed in this case he chose to settle in full with Smith and Burden, he must be held to have done it at his own risk.

The only remaining question relates to the amount for which judgment should be entered. All of the cement was sold to Smith and Burden and delivered to them at the site of the work, and it was all accepted by the Commonwealth and subsequently was used in the work. Only a part of it, however, was used by them. They failed in December, 1896, and abandoned their contract. At that time more than one half of the cement was still unused. Upon this failure, Casparis, under his contract

with Smith and Burden, had the right "by contract or other-
wise," as he might determine, to complete the work covered by
the contract and charge the expense thereof to them, and to use
therefor such of their "materials, animals, machinery, implements
and tools of every description as may be found upon the line of
said work." He chose to settle with them and to make a con-
tract with the Standard Construction Company to complete the
work. As to the cement and other materials left upon the line
of the work, Casparis testified that he bought them of Smith and
Burden and received from them a bill of sale, and that upon
purchasing the material, "I merely took and wrote a check from
the Standard Construction Company and gave Mr. Badger my
own check." (Mr. Badger seems to have been the attorney
either of Smith and Burden or of their assignees.) Casparis
further testified that he immediately transferred the property to
the Construction Company and passed over to it the bills of
sale. While the transfer of this cement thus took the form of
a sale from Smith and Burden to Casparis and from Casparis to
the Standard Construction Company, it is apparent that in sub-
stance the transaction was a taking possession of the cement
under the contract and a use of it thereunder. The cement was
on the line of the work. Casparis had the right to take posses-
sion of it and to use it, giving Smith and Burden credit for it,
and he had the right to complete the work by contract or other-
wise at their expense. It is argued by him that he settled with
Smith and Burden in November, 1896. The judge, however,
may well have found upon this record that the payment of
November 20, 1896, was not a full settlement of all contractual
rights existing between the parties, but at most was only a pay-
ment in full for all demands held by Smith and Burden against
Casparis at that time; that the right of Casparis under the
contract to take the materials, implements and tools of every
description then upon the line of the work, giving due credit for
them to Smith and Burden, still existed; and that, instead of
going on and leaving this matter open, he, in February, 1897,
made a contract with the Construction Company to complete the
work, and, in the exercise of his rights in this respect under
the contract with Smith and Burden, agreed with them as to
the price of the cement and tools upon the line of the work, and

received the bill of sale. The cement was bought by Smith and Burden for the aqueduct, it was sold for that purpose, and it had been delivered upon the line of the work and had been accepted by the Commonwealth as suitable. It then came into the hands of Casparis in substance under the right reserved in the very contract by virtue of which Smith and Burden designated it for the aqueduct, and it went to the Standard Construction Company, through whom, by virtue of the Smith and Burden contract, Casparis had the right to complete the work by contract, and it was finally used in the work. . At no time after the delivery was the cement designated for any other purpose, but during the whole time between the delivery and its use it was in the possession of persons whose rights to use it came substantially from Smith and Burden and were based upon their relation to the work which existed at the time the cement was delivered. The case differs therefore from that of an independent sale. Under the circumstances, we think that the petitioner is entitled to the whole of his claim.

*Decree affirmed.*