C. C. Smith Company, Inc. *vs.* Frankini Construction Company & others.

Suffolk. May 10, 1956. — June 29, 1956.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Public Works. Contract*, Building contract, Performance and breach, Subcontract.

A subcontractor on a public building construction project who had satisfactorily completed his work except for a few minor items but had not been paid by the general contractor a substantial amount which ought to have been paid under the terms of the subcontract might then properly treat the subcontract as still subsisting yet withhold comple-

tion of his work until paid, and where, some eight months later, the general contract was terminated for default of the general contractor and the subcontractor thereby lost his standing to complete his work, the time of such termination should be taken as the time when the subcontractor ceased to "furnish labor . . . [and] materials" within G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, so that a sworn statement of claim filed by him under that statute within sixty days after the termination was seasonably filed.

PETITION, filed in the Superior Court on September 9, 1954.

Following intervention by Anchor Post Products, Inc., and the report of a master, a final decree was entered by *Brogna, J.,* in which the first paragraph confirmed the report of the master, the second established the intervener's claim against Frankini Construction Company, and the third dismissed the intervening petition as against Medford Housing Authority and Peerless Casualty Company. The intervener appealed.

*Calvin P. Bartlett,* (*Alison B. Carnahan* with him,) for the intervener.

*Bernard P. Rome,* (*Julius Thannhauser* with him,) for the trustee in bankruptcy.

SPALDING, J. This is a petition brought by a subcontractor under G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, to reach the security retained by the defendant Medford Housing Authority (hereinafter called the authority) under a general contract with the defendant Frankini Construction Company, hereinafter called Frankini. Peerless Casualty Company, the surety on Frankini's performance and payment bond, was also a defendant. Anchor Post Products, Inc., was allowed to intervene, and inasmuch as the present controversy has to do exclusively with its claim it will be referred to hereinafter as the petitioner. Its petition contains a prayer that such part of the petitioner's claim as may not be satisfied out of funds retained by the authority be enforced against Peerless. Frankini was adjudicated a bankrupt and its trustee in bankruptcy has appeared and answered and contends that he is entitled to the retained funds in controversy. He will be

referred to hereinafter as the defendant. The petitioner's claim, along with others, was referred to a master. With respect to the petitioner's claim the master filed a report. A decree was entered confirming the report and adjudging that Frankini was indebted to the petitioner in the sum of $4,344 plus $484.36 and $17.50 for interest and costs respectively; the decree further provided that as to the authority and the Peerless Casualty Company the intervening petition be dismissed. The petitioner appealed.

Facts found by the master include the following: On July 31, 1952, Frankini and the authority entered into a contract for the construction of a "PHA Aided Housing Project" in Medford. Frankini was the general contractor and under the contract was to furnish all the labor and materials for the project for the price of $1,428,737.75. As required by the contract, Frankini, as principal, and Peerless Casualty Company, as surety, executed and delivered to the authority a statutory performance and payment bond. (See G. L. [Ter. Ed.] c. 149, § 29; G. L. [Ter. Ed.] c. 121, § 26V, as appearing in St. 1946, c. 574, § 1.) Thereafter Frankini entered into various subcontracts for the performance of certain portions of the work by others. One of these subcontracts was with the petitioner. Under its subcontract the petitioner, for the sum of $7,500, was to furnish and install the chain link fencing and clothes posts at the project according to the plans and specifications and subject to the provisions of the general contract. Progress payments were to be made monthly within ten days of receipt by Frankini of payment from the authority. By December 8, 1953, the petitioner had "substantially completed" all of the work under its subcontract. All of the work performed and materials furnished were "considered satisfactory and in accordance with the terms of the contract." Some work, however, remained to be done, namely, "preening" the bolts which fasten parts of the clothes posts, and furnishing and installing metal caps on one hundred nine clothes posts. The fair value of the labor and material required to finish this work was $156.

Down to December 8, 1953, the authority had made progress payments to Frankini totaling $6,547.28 on account of the work done by the petitioner, but only $3,000 was paid by Frankini to the petitioner. The petitioner informed Frankini that it would not complete the work unless it received the balance then due.

On July 29, 1954, the authority declared Frankini to be in default on the general contract and on August 5, 1954, notified Frankini that it was terminating the contract as of August 11, 1954. The reasons assigned for the termination were (1) repeated failure to supply enough properly skilled workmen, (2) failure to make prompt payment to subcontractors, (3) persistent disregard of instructions of the authority and the architect, and (4) failure to perform the provisions of the contract. Under the general contract a failure on the part of the contractor with respect to any of the foregoing matters gave the authority the right to terminate the contract. Frankini performed no work thereafter; nor did the petitioner ever complete the work which remained unfinished on December 8, 1953. Having learned that the authority had terminated the general contract, the petitioner on October 4, 1954, filed with the city clerk of Medford a sworn statement of its claim, which was sufficient as to both form and content.

The master found that Frankini was indebted to the petitioner in the sum of $4,344, representing the subcontract price of $7,500 less the payment of $3,000 and the fair value ($156) of the unfinished work. As to the right of the petitioner to reach the security in the hands of the authority, the master made no finding as he deemed that to be a question of law which depended on whether the claim was filed within the time required by G. L. (Ter. Ed.) c. 149, § 29.

By reason of G. L. (Ter. Ed.) c. 121, § 26V, the provisions of G. L. (Ter. Ed.) c. 149, § 29,[1] were made applicable to housing authorities. *Philip Carey Manuf. Co.* v. *Peerless Casualty Co.* 330 Mass. 319. The parties have argued the

---

[1] See now St. 1955, c. 702, § 2.

case on the footing that the petitioner's right to recover from the amount retained by the authority depends on proof of compliance with this statute by the petitioner, and we shall deal with the case accordingly.[1]   The question, therefore, for decision is whether the petitioner complied with its provisions in filing its sworn statement of claim on October 4, 1954.   The trial judge by dismissing the petition as to the authority and the Peerless Casualty Company evidently took the view that the requirements of § 29 as to the time of filing had not been satisfied.   Section 29, so far as here material, reads: ". . . but in order to obtain the benefit of such security the claimant shall file in the office of the county treasurer or of the city or town clerk a sworn statement of his claim within sixty days after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment as aforesaid . . . ."

The defendant contends that the petitioner by filing its claim approximately ten months after it had ceased work on the project did not bring itself within the quoted provisions of the statute.   The defendant recognizes that a claimant under § 29 ordinarily has no standing if he files his claim before he has completed his work under the contract.   That principle is well settled by our decisions. *Mario Pandolf Co. Inc.* v. *Commonwealth,* 303 Mass. 251.   *International Business Machines Corp.* v. *Quinn Brothers Electrical Co.* 321 Mass. 16, 19.   And, as the case last cited holds, that principle applies even though the amount of work remaining to be done is comparatively slight.   But, argues the defendant, the following two courses were open to the petitioner on the facts here and it pursued neither.   On December 8, 1953, it could have terminated its contract with Frankini because of the latter's default and sued for substantial performance on a quantum meruit, and could have reached the security, provided its claim was filed within sixty days; or it could have completed its work under the contract and by filing

---

[1] The amount retained by the authority does not appear but it was conceded at the arguments before us that the authority had funds which it had retained.

its claim within sixty days thereafter could likewise have reached the security. We do not agree that these were the only courses open to the petitioner. We assume, as the defendant has argued, that the petitioner might have treated the contract as terminated on December 8, 1953, and sued at once for substantial performance on a quantum meruit and would have been entitled to the security provided by § 29 if it had filed its claim within sixty days. *General Fire Extinguisher Co.* v. *Chaplin*, 183 Mass. 375, 378. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49. *Zarthar* v. *Saliba*, 282 Mass. 558. And, of course, the petitioner could have completed its work under its subcontract and then could have taken the appropriate steps to obtain the security. But under the law of contracts and apart from the question of security the petitioner was not obliged to pursue either of these courses. Frankini had broken its contract with the petitioner by not making the payments to it as called for by the subcontract. The finding of the master in the petitioner's favor against Frankini and the decree below thereon establish that the petitioner was not in default. In these circumstances the petitioner could treat the contract as still subsisting but could withhold further performance until it had received the payments in arrears. Restatement: Contracts, § 276, Illustration 5. Williston, Contracts (Rev. ed.) § 848. Hence its failure to perform between December 8, 1953, and August 11, 1954, when the authority abrogated its contract with Frankini, was justified.

The question then narrows down to whether by pursuing the course last mentioned the petitioner preserved its right to the security provided for by § 29 by filing its claim on October 4, 1954. We are of opinion that it did. After August 11, 1954, the petitioner was in no position to complete the work.[1] Its right to work on the project was de-

---

[1] We do not pause to consider the argument of the defendant to the effect that there was no finding of the master that Frankini was in fact in default or that the general contract was terminated. We are of opinion that the case was tried to the master on the basis that both of these things had occurred, for he states that the sole issue before him was whether the petitioner's claim met the requirements of the statute as to time.

rived from its subcontract with Frankini and when the general contract was terminated it had no standing to perform further, in the absence of a new contract between it and the authority; but no such contract was ever made. While the statute (§ 29) does not specifically deal with the situation here presented and the question is one of first impression, we are of opinion, nevertheless, that the filing of the claim within sixty days from the termination date of the general contract was within the spirit and intendment of the statute and that its requirements as to time of filing were satisfied. Where a claimant has satisfactorily performed his work under a subcontract he ought not to be deprived of the security afforded by § 29 because of the fortuitous circumstance that further performance by him has become impossible by reason of the default of the general contractor. The completion date for the purposes of computing the time for filing a claim in such a case is the date when the contract with the general contractor has been terminated. At that time the claimant may be said to have ceased to "furnish labor . . . [and] materials" within the purview of the statute. That date here was August 11, 1954, and the petitioner's claim, which was filed on October 4, was seasonable. A different construction would be unfair to the subcontractor and the security which he thought he was getting under § 29 would in many cases turn out to be a snare and a delusion. The course pursued by the petitioner in withholding further performance until it was paid was a permissible one under the law of contracts and the price of its exercise ought not to be the loss of the security.

The final decree is affirmed as to the first two paragraphs. Paragraph 3 is to be struck out and a new paragraph is to be substituted which shall provide in substance that the authority be ordered to pay to the petitioner out of the fund retained by it under the general contract the sum of $4,344 together with interest thereon from the appropriate date (costs may be added in the discretion of the court), and

that, to the extent that the authority has not retained funds sufficient to pay these amounts, the Peerless Casualty Company be ordered to pay the balance thereof to the petitioner. As so modified the final decree is affirmed. The petitioner is to have costs of this appeal.

*So ordered.*