MOSAIC TILE COMPANY *vs.* RUSCO PRODUCTS OF MASSACHUSETTS, INC. & others.[1]

Suffolk.  January 3, 1966. — March 11, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Public Works. Bond,* Public work. *Equity Pleading and Practice,* Plea in bar, Demurrer.

Pleas in a suit in equity captioned "pleas in bar" but introducing no new matter and merely pointing to allegations in the bill which would preclude the relief sought were treated as demurrers. [435]

---

[1] John H. Krick, trustee in bankruptcy of Structural Panel Corporation; Wexler Construction Company, Inc.; Providence Washington Insurance Co.; Travelers Indemnity Co.; and the town of Framingham.

A claim under G. L. c. 149, § 29, may reach the statutory payment security bond furnished by the general contractor on a public construction project but not the nonstatutory payment security bond given by a subcontractor to the general contractor.   [437]

The retainage for payment security purposes kept by the general contractor on a public construction project out of sums owed by him to a subcontractor pursuant to the contract between them is subject neither to G. L. c. 149, § 29, nor to G. L. c. 30, § 39F.   [438]

In a suit in equity by an unpaid seller of materials to a subsubcontractor on a public construction project against the subcontractor and the surety on the nonstatutory payment security bond given by the subcontractor to the general contractor, it was error to sustain demurrers of the defendants raising a defence applicable only to statutory payment security bonds furnished under G. L. c. 149, § 29.   [438]

In a suit in equity under G. L. c. 149, § 29, by an Ohio corporation, an unpaid seller of materials to a Connecticut corporation, a subsubcontractor on a public construction project in Massachusetts, against the general contractor and the surety on his statutory payment security bond, allegations in the plaintiff's bill, that the materials were delivered to the Connecticut corporation, that the Connecticut corporation delivered the materials to the subcontractor at the site of the project, and that on a certain date less than ninety days after such delivery at the site a sworn statement of the plaintiff's claim was filed "in accordance with" § 29, sufficiently asserted compliance with the requirement of § 29 prerequisite to recovery, that such a statement be filed within ninety days after the claimant "ceases to . . . furnish . . . materials . . . for which claim is made," as against demurrers challenging compliance by pointing solely to dates appearing in invoices annexed to the bill showing shipment by the plaintiff to the Connecticut corporation more than ninety days before the filing of the plaintiff's statement; and the demurrers should have been overruled.   [439–440]

BILL IN EQUITY filed in the Superior Court on October 10, 1963.

The suit was heard by *Sullivan, J.,* on "pleas in bar."

*Lawrence A. Ruttman* for the plaintiff.

*Barry J. Walker* for Rusco Products of Massachusetts, Inc. & another (*Abraham Margolis,* for Wexler Construction Company, Inc. & another, with him).

KIRK, J.   By this bill in equity the plaintiff, an Ohio corporation, seeks to establish its right to payment for materials furnished by it for use in the construction of a school building in Framingham (the town).   No appeal has been taken from a final decree dismissing the bill as against the town.   It does not appear from the record that

the defendant trustee in bankruptcy of Structural Panel Corporation (Structural), a Connecticut corporation, has any interest in the matter now before us. We are thus concerned only with the remaining defendants, later to be identified, each of whom filed identical pleadings to the plaintiff's bill in the form of a plea in bar and a demurrer. The judge by interlocutory decree sustained each of the pleas in bar and entered a final decree dismissing the bill. No action whatever was taken or sought on the demurrers. We cannot consider them.

The plaintiff appealed the final decree dismissing its bill. The judge allowed a bill of exceptions relating to his interlocutory decrees sustaining the pleas in bar.

No evidence was offered by any party and none was requested by any party or by the judge. There was no agreement or stipulation as to any fact. The "pleas in bar" introduce no new matter which if proved, would defeat the bill. They merely point to allegations in the bill which, they averred, when read with the invoices annexed to the bill, would preclude the relief sought by the plaintiff. The so called pleas thus are directed to the alleged inadequacies on the face of the bill. Despite the captions, the "pleas in bar," in legal substance and effect, are demurrers and we treat them as such. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 149. *Spadea* v. *Stewart, ante,* 218, 222, and cases cited. See *Becker* v. *Zarkin,* 292 Mass. 359, 361 and *Kalmus* v. *Kalmus,* 330 Mass. 41, 42.

The only question before us is whether the bill was properly dismissed.

The bill alleges that on May 16, 1962, the town contracted with the Wexler Construction Company, Inc. (Wexler) for the construction of a school building at a cost of $5,652,481. The contract provided for payment security for all labor and materials used by subcontractors. This was to be accomplished by the town retaining a percentage of the amount owed to Wexler until completion of the work, and also by Wexler furnishing a payment security bond equal to the contract price, on which the defendant Travelers Indemnity Co. (Travelers) was surety.

Wexler subsequently contracted with Rusco Products of Massachusetts, Inc. (Rusco) for the installation of certain materials in the school building. The contract price was $300,000. The payment security provisions of the Wexler-Rusco contract resembled those in the town-Wexler contract, with Wexler retaining part of the money due to Rusco, and Rusco giving a bond in the amount of $300,000 with the Providence Washington Insurance Co. (Providence) as surety for payment for labor and materials furnished in connection with Rusco's work.

Rusco thereafter subcontracted with Structural for the delivery of certain materials required by the Wexler-Rusco contract, at a cost of $49,500. Structural, in turn, contracted with the plaintiff for the purchase of materials required by the Structural-Rusco contract. The price was $9,638.14. The materials were delivered to Structural, but the bill does not specify the date. Notations on the invoices annexed to the plaintiff's bill indicate that the plaintiff shipped the materials from its plant in Ohio to Structural, in Connecticut, on October 25 and November 14, 1962.

The bill alleges that Structural was adjudicated a bankrupt in the United States District Court for the District of Connecticut on an unspecified date subsequent to March 21, 1963. Structural, however, completed its work under its contract with Rusco and made delivery to Rusco at the school site on or about May 13, 1963. The plaintiff has never been paid by Structural. It notified Travelers and Providence on May 24, 1963, of its intention to enforce its claim under the payment security bonds. On the same day, the plaintiff wrote Rusco that it claimed a lien under G. L. c. 254, § 31, added by St. 1961, c. 530.[2] The bill alleges that

---

[2] "In the event that a general contractor or a subcontractor on any construction work is adjudged a bankrupt . . . at a time when there are sums due or which later become due from the person contracting for the work on account of the work of such general contractor or when there are sums due or which later become due from the general contractor on account of the work of such subcontractor, each person furnishing labor or labor and materials to such general contractor or such subcontractor shall have a lien each in proportion to the amount of his respective claim on all such sums due or which later become due in connection with the particular construction work . . . . The provisions of this section shall not apply to any contract with the commonwealth or with any political subdivision thereof or any other public instrumentality."

on June 4, 1963, the plaintiff filed its sworn statement of claim with the town clerk "in accordance with" G. L. c. 149, § 29. It alleges that the bonds and the retained percentages constitute security for the satisfaction of Structural's indebtedness to it. On this theory, the plaintiff asks that its claim be satisfied through the bonds under G. L. c. 149, § 29, or through funds retained by Rusco in its contract with Structural under G. L. c. 254, § 31, or through those retained by Wexler under its contract with Rusco.

So far as now relevant, Rusco, Wexler, Providence and Travelers are the defendants. Their pleas in bar, pointing solely to the dates of shipment as appearing in the invoices annexed to the bill (October 25, 1962, and November 14, 1962) and to the date of notice to the town clerk (June 4, 1963), ask that the bill be dismissed on the ground that G. L. c. 149, § 29, requires that a sworn statement of claim under a payment security bond in a public contract be filed with the town clerk "prior to the expiration of ninety days after the claimant ceases to . . . furnish . . . materials . . . for which claim is made . . .."

The only questions are whether the bill was properly dismissed as to all the remaining defendants. Before considering these questions, however, we should untangle the various asserted rights of the plaintiff, indicate their proper origins and single out those that are properly before us. We need not, of course, consider the claims against the town since there is no appeal from the decree dismissing the bill as against it.

(1) The plaintiff asserts that under G. L. c. 149, § 29, its claim is secured by the payment bonds provided by Wexler for the benefit of the town (the Wexler-town-Travelers bond), and by Rusco for the benefit of Wexler (the Wexler-Rusco-Providence bond). Section 29, however, covers only bonds given by the general contractor and does not affect a payment security bond from a subcontractor to the general contractor. *Marinucci Bros. & Co. Inc.* v. *Semper Constr. Co. Inc.* 343 Mass. 738, 740. Thus, only the Wexler-town-Travelers bond may be reached by a claim under § 29.

(2) The plaintiff asserts rights in the retainage kept by Wexler for payment security purposes under its contract with Rusco. This security, created by contract, is subject neither to G. L. c. 149, § 29, which concerns bond security only, nor to G. L. c. 30, § 39F, which concerns only retainage held by an "awarding authority" which is a "public body."

(3) Finally, the plaintiff seeks to establish a lien, under G. L. c. 254, § 31, added by St. 1961, c. 530 (see fn. 2), on funds allegedly held by Rusco as retainage for payment security in its contract with Structural. Statute 1961, c. 530, does not apply to contracts with the Commonwealth or its political subdivisions. Whether it applies to contracts between subcontractors under a general contract for public works has not yet been decided by this court. As will appear, the present record offers no basis for a decision on the question now.

In summary, the plaintiff has the following theories of recovery: Under No. (1) above, a right under the statutory Wexler-town-Travelers bond and a right under the nonstatutory Wexler-Rusco-Providence bond; under No. (2) above, a nonstatutory, contractual claim to funds retained for payment security purposes by Wexler in its contract with Rusco; and under No. (3) above, a statutory right to a lien on funds retained by Rusco in its contract with Structural.

The pleas in bar, treated by us as demurrers, filed by Wexler and Travelers and by Rusco and Providence invoke only the provisions of G. L. c. 149, § 29, relating to filing of a sworn statement of claim. Thus, what was put in issue by the defendants were only those claims of the plaintiff relating to statutory payment security bonds. The Wexler-Rusco-Providence bond, however, was not a statutory bond. A defence applicable to a statutory bond, therefore, was of no avail to those defendants. It follows that there was error in sustaining the pleas of Rusco and Providence, treated as demurrers, on that ground. The interlocutory and final decrees in favor of Rusco and Providence must be reversed.

The Wexler-town-Travelers bond, on the other hand, was a statutory bond. The filing of the sworn statement of claim with the town clerk prior to the expiration of ninety days after the plaintiff ceased to furnish the materials was a prerequisite to recovery. *Regan* v. *Tierney,* 306 Mass. 168, 170. The issue raised by Wexler's and Travelers' pleas in bar, treated as demurrers, is the sufficiency of the allegation that the plaintiff seasonably complied with G. L. c. 149, § 29. This, in turn, requires a determination of what fixes the bounds of the ninety day period.

Wexler and Travelers cite the shipping dates of October and November, 1962, in the invoices and, on the premise that those dates mark the running of the ninety day period, argue that the filing with the town clerk on June 4, 1963, came more than ninety days after the plaintiff had ceased to furnish its goods. Hence, these defendants contend, lack of a seasonable sworn statement of claim appears on the plaintiff's bill and the suit fails for noncompliance with the statutory provision.

If, indeed, the plaintiff, in the statute's terms, had ceased to furnish its materials when they were shipped, the ninety day period would begin to run at that time. Shipping dates have, in fact, been used to determine the time before which the statement could not be filed by the claimant with the designated public official. *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 352. The reason for this is that the claimant cannot be said to have ceased to furnish the materials before shipping them. On the other hand, it accords with the broad construction given this remedial statute (*C. C. Smith Co. Inc.* v. *Frankini Constr. Co.* 334 Mass. 379, 385; *Cohen* v. *Henry N. Worthington Co.* 334 Mass. 509, 514) to allow the phrase "ceases to furnish" to embrace the sequence of shipment and delivery so that the time period may run from the last date of receipt of the materials by the consignee. See *Westinghouse Elec. Corp.* v. *J. J. Grace & Son, Inc.* 349 Mass. 664, 666–667.

The plaintiff's bill relates that the goods were delivered to Structural and that a sworn statement of claim was filed

with the town clerk "in accordance with" G. L. c. 149, § 29. We think that these averments, as challenged by the plea here, sufficiently assert compliance with the statute. See *Berlandi* v. *Union Freight R.R.* 301 Mass. 47, 49, 51, and *Paddock* v. *Brookline,* 347 Mass. 230, 232. Whether the date that the plaintiff actually ceased to furnish the goods by having delivered them as opposed to merely having shipped them was more than ninety days prior to the filing of the statement with the clerk is a question for the trier of fact. The Wexler and Travelers pleas, treated as demurrers, should, therefore, have been overruled. The situation could, of course, be clarified by an amendment to the plaintiff's bill or by answers by the plaintiff to pre-trial inquiries by the defendants. G. L. c. 231, §§ 61, 69.

Inasmuch as the defendants' "pleas in bar" were addressed only to the claim for recovery under the statutory bond, the claims under the Wexler retainage, the Rusco bond, and the lien under G. L. c. 254, § 31, remain to be considered by the Superior Court. *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Constr. Co.* 283 Mass. 121, 125–126.

The interlocutory and final decrees are reversed, and the exceptions of the plaintiff are sustained.

*So ordered.*