WARREN BROTHERS ROADS COMPANY *vs.* JOSEPH RUGO, INC. & others.[1]

Suffolk.    January 7, 1969. — February 28, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Public Works.*

Where it appeared that a sub-subcontractor for laying paving on a public construction project had done a part of the work by December in one year, for which it was not paid, and then suspended work for the winter and because of failure of the subcontractor to do certain work, that in the spring of the following year the general contractor, due to financial difficulties of the subcontractor, took over the subcontractor's work without the knowledge of the sub-subcontractor, that late in that year the sub-subcontractor, after having kept in touch with the progress of the job, contracted with the general contractor to complete the paving work, and that the sub-subcontractor thereupon promptly completed it and was paid in full for what it then did, it was held that the ninety day period under G. L. c. 149, § 29, for filing a sworn statement of claim for the unpaid amount for the part of the paving work done the previous year began to run upon such completion of all the paving work and that a sworn statement filed within a few days thereafter was seasonably filed.

[1] Arnold H. Maroni, American Employers' Insurance Company, Aetna Insurance Company.

BILL IN EQUITY filed in the Superior Court on November 20, 1964.

The suit was heard by *Lurie*, J., on a master's report.

*John A. Gledhill, Jr.*, for Joseph Rugo, Inc. & others.

*Donald A. Macksey* (*Harry Downs* with him) for the plaintiff.

WILKINS, C.J. The Commonwealth made a written contract with the defendant Joseph Rugo, Inc. (Rugo) for the construction of a building at the Lakeville State Hospital. Pursuant to G. L. c. 149, § 29, Rugo, the prime contractor, as principal, furnished a bond for payment of subcontractors and materialmen. The respondent insurance companies (Employers' and Aetna) were sureties. This suit by Warren Brothers Roads Company (Warren) is to obtain the benefit of the bond. The facts are stated in a master's report. The defendants other than Maroni, who did not participate in the hearing before the master, appealed from a final decree in favor of the plaintiff.

The sole issue is whether a sworn statement of claim was seasonably filed under G. L. c. 149, § 29 (as amended through St. 1962, c. 696), which provides in material part: "In order to obtain the benefit of such security the claimant shall file with . . . the contracting officer or agent in the case of a contract with the commonwealth . . . a sworn statement of his claim prior to the expiration of ninety days after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment . . . as aforesaid, for which claim is made . . . ."

Specifications in Rugo's contract with the Commonwealth called for bituminous concrete paving to be laid over a specified area upon a gravel base. The bituminous concrete paving was subcontracted by Rugo to Maroni. On September 7, 1962, Maroni further subcontracted with Warren for installation of the concrete paving. Under that contract Maroni was required to furnish the gravel base. Warren was to fine-grade and roll the gravel base and then lay a three-layer pavement. The three layers in order were crushed stone, a binder, and top bituminous concrete sur-

face material. The area to be paved by Warren was about 12,000 square yards.

By December 10, 1962, Warren had graded, rolled, and laid 6,744 square yards with crushed stone and binder, and had exhausted all the working area graveled by Maroni. For this reason and due to the onset of the winter season Warren suspended operations until the spring, and informed Maroni to advise when the remaining areas were prepared for the continuance of the paving operation.

In the spring of 1963 Maroni encountered financial difficulty and could not pay his bills. He had paid nothing to Warren for the work and material furnished in December, 1962, which amounted to $12,695.38.[1] In May, 1963, in order to meet its contractual obligation to the Commonwealth, Rugo took over the Maroni equipment at the job site and placed former Maroni personnel on the Rugo payroll. To all appearances no one would know that Maroni was not still performing work. No changes were made in the markings on the Maroni equipment. No one advised the Commonwealth or Warren that Maroni was off the job. The records of the clerk of the works showed as late as November 14, 1963, that Maroni had six men on the job. These were actual employees of Rugo. Maroni was willing to resume work in the spring of 1963, but Rugo justifiably refused to permit it. To have done so would have been inefficient and bad business judgment.

In May, 1963, Warren heard of Maroni's financial difficulty, but had no knowledge of the nature of the agreement between Rugo and Maroni. On May 10, 1963, Warren, at Rugo's suggestion, wrote to Rugo demanding payment of the overdue Maroni bill. On July 15, 1963, Warren sent bills to Maroni for $12,695.38, with interest. On August 15, 1963, Warren wrote Rugo enclosing copies of the bills, stating that Maroni had requested it to commence work, but had not paid its previous bill, and that Rugo had asked a

[1] Payments were to be made by Maroni to Warren within ten days after Rugo received progress payments from the Commonwealth. Final payment was to be made not later than ten days after Rugo was paid.

price from Warren "to complete the contract." Warren submitted a price, adding that it "would have to receive payment on our Maroni contract," and that the balance of that contract should become void.

On August 28, 1963, Maroni wrote Warren "to complete the asphalt work at the Lakeville Hospital." Warren did go to the site with men and some equipment. From spring to August, 1963, Warren's superintendent kept in touch to see if the job had progressed to the stage where Warren could resume work. On November 6, 1963, Rugo and Warren entered into a contract whereby Warren was to complete the work which Warren was under obligation to do for Maroni under the original Warren-Maroni contract. Warren commenced this work on November 8, 1963, and completed it on December 10, 1963. All sums due Warren from Rugo for this work have been paid.

On December 13, 1963, Warren filed a sworn statement for $12,695.38 with the Division of Building Construction of the Commonwealth.

Warren last actually performed work and furnished materials at the job site in December, 1962, and did not file its claim till one year later on December 13, 1963. It is seeking no recovery for work done after 1962. Were this all that is material, there would not be compliance with § 29. But there is much more properly to be considered. Warren was forced to stop work in December, 1962, partly because of Maroni's failure to have completed its part of the work which necessarily had to be done first. Warren then was planning to continue with its contract in the spring, and asked Maroni to inform it when the preliminary work was done. From spring to August, 1963, Warren's superintendent kept in touch with the job to see if it had progressed to the stage where Warren could resume work. On August 15 Warren informed Rugo that Maroni had requested it to commence work and on August 28 Maroni wrote Warren to complete the asphalt work. Warren went to the site with men and equipment. It was not until May, 1963, that Maroni's financial difficulties came to Warren's

attention.  Also unbeknown to Warren, Rugo refused to let Maroni resume work, and in May, for the purpose of completing its contract with the Commonwealth, took over Maroni employees and equipment, without changing the markings.  From appearances no one would know that Maroni was not still on the job.  Warren and the Commonwealth were never so advised.

Up to this point the contract between Maroni and Warren was still in existence and might be further performed. Wholly apart from Maroni's unfinished gravel work, the unpaid balance would have been enough to enable Warren to treat the contract as subsisting and to withhold performance until it should be paid  without losing the security.  *C. C. Smith Co. Inc.* v. *Frankini Constr. Co.* 334 Mass. 379, 384.  See Restatement: Contracts, § 276, illustration 5; Williston, Contracts (3d ed.) § 848.

There was nothing to require a finding that the Warren-Maroni contract was terminated until November 6 when Rugo and Warren entered into a contract for Warren to complete the work which Warren was obliged to perform under its contract with Maroni.  Warren commenced this work promptly and completed it on December 10, 1963. Since this work was covered by the original contract, the ninety-day period began to run from the date of its completion.  *Dolben* v. *Duncan Constr. Co.* 276 Mass. 242, 251–252.  See *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Constr. Co.* 283 Mass. 121, 124, 125.

We hold that the plaintiff's claim was seasonably filed on December 13, 1963.  This comports with the statutory purpose.  Section 29 is to be given a liberal interpretation.  It is broadly designed to afford security to those who have contracted to furnish labor, equipment, or materials on public work.  See *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 353; *Cohen* v. *Henry N. Worthington Co.* 334 Mass. 509, 514–515; *Mosaic Tile Co.* v. *Rusco Prod. of Mass. Inc.* 350 Mass. 433, 439.

*Decree affirmed*
*with costs of appeal.*