AMERICAN AIR FILTER COMPANY, INC. *vs.* INNAMORATI
BROTHERS, INC. & another.

Suffolk. March 4, 1970. — July 6, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Public Works.*

An unpaid seller of materials to a subcontractor on a public construction
project was entitled to the benefit of the statutory payment security
bond furnished by the general contractor under G. L. c. 149, § 29, and
to payment of its claim in a suit in equity by it thereunder, where it
appeared that the plaintiff had delivered all the required materials to
the job site, was not required to perform any labor with respect thereto,
and seasonably filed its sworn statement of claim, notwithstanding the
facts that after the plaintiff had completed delivery of the materials the
subcontractor was adjudicated a bankrupt and its subcontract was
terminated and that its trustee in bankruptcy removed the materials
from the job site and sold part thereof to a succeeding subcontractor
and part to one who resold to the succeeding subcontractor, who in-
stalled the materials in the building constructed and was paid therefor
by the general contractor.

BILL IN EQUITY filed in the Superior Court on July 22,
1964.

The suit was heard by *Kalus*, J., on a master's report.

*Jacob J. Locke* for the plaintiff.

*Jon C. Mazuy* (*Sally A. Corwin* with him) for the de-
fendants.

QUIRICO, J. American Air Filter Company, Inc. (Ameri-
can), brought this bill under G. L. c. 149, § 29, against
Innamorati Brothers, Inc. (Innamorati), and the Hartford
Accident and Indemnity Company (Hartford) to recover
for materials furnished by American to one of Innamorati's
subcontractors in the construction of a public building. The
case is before us on American's appeal from the final decree
dismissing the bill on the basis of facts found and reported
by a master, and an interlocutory decree confirming the
master's report.

On September 30, 1963, Innamorati entered into a contract with the town of Hopedale, in this Commonwealth, to construct an addition to a public high school.  On the same day Innamorati as principal and Hartford as surety executed a bond to the town as obligee as required by G. L. c. 149, § 29.  The bond provided in part "for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed" in the construction of the school addition.  Innamorati as the general contractor then entered into a written contract with Kahn Heating Corporation (Kahn) under which the latter as a subcontractor would furnish all of the labor and materials necessary for the heating and ventilating work in the construction of the building.

Kahn issued a written purchase order to American for $8,658 worth of equipment required for Kahn's performance of its subcontract.  American delivered all of the equipment covered by the purchase order to the school site on February 26 and March 16, 1964.  Title to the equipment passed from American to Kahn prior to its delivery at the school site.  All of the equipment was as specified in Innamorati's contract with the town.  American was not required to perform or furnish any labor at the school site since it was not a subcontractor, but a supplier of materials to Kahn.

On April 14, 1964, American seasonably filed a sworn statement of its claim in proper form for $8,658 with the town clerk of Hopedale.  G. L. c. 149, § 29.  It then filed its bill in equity in this case on July 22, 1964.  This was the last step required of American to obtain the benefit of the security of the bond.  It is entitled to the benefit of that security and to the payment of its claim unless barred by events which occurred after it completed its delivery of the equipment to Kahn at the school site on February 26 and March 16.

On April 9, 1964, Kahn filed a written consent to be adjudicated a bankrupt, and it was so adjudicated on April 13, 1964.  It furnished no labor or materials at the school site after April 9, 1964, and it did not install any of the equipment furnished to it by American.  On April 21, 1964,

Innamorati wrote Kahn terminating the latter's subcontract. Innamorati then negotiated with Robert A. LaCentra Co., Inc. (LaCentra), for the completion of the heating and ventilating work and they signed an agreement therefor on August 6, 1964. Both American and Kahn's trustee in bankruptcy (trustee) claimed the equipment American had delivered to the job site, and LaCentra was informed of such claims. Six console heaters delivered by American and having a fair value of $1,264.35 were removed from the job site by the trustee prior to May 20, 1964, on which date he sold them at public auction to Hampden Supply Co., Inc. (Hampden). LaCentra purchased these same heaters from Hampden on August 16, 1964, for $800, brought them to the job site, and installed them in the school addition. Sometime after July 30, 1964, the rest of the equipment furnished by American to Kahn was removed from the job site by the trustee. The trustee negotiated a sale of this and certain other equipment to LaCentra for $2,450,[1] and the sale was approved by the referee in bankruptcy (referee) on August 18, 1964. LaCentra then brought all of this equipment to the job site and installed it in the school addition, except for eleven spare filters having a fair value of $33.

The action of the trustee in removing the American equipment from the job site and selling it in part to Hampden and in part to LaCentra was taken after petitions to the referee for approval thereof and notice of each such petition to all of Kahn's creditors, including Innamorati and American. All such petitions were duly approved by the referee.

The language of G. L. c. 149, § 29, clearly indicates that the surety bonds required thereby in connection with the construction of public buildings or public works are intended to provide security for payment by contractors and subcontractors for both *"labor performed or furnished and materials used or employed"* (emphasis supplied) in such

---

[1] The sale at this price included four fans furnished to Kahn by a supplier other than American. The other supplier had furnished a total of five fans at an agreed price of $665; and only one of such fans valued at $130 was installed in the school addition.

construction. It is well established that suppliers of materials to contractors and subcontractors were entitled to the benefit of such security. *Nash* v. *Commonwealth,* 174 Mass. 335, 336–337. *Nash* v. *Commonwealth,* 182 Mass. 12, 16–17. *Friedman* v. *County of Hampden,* 204 Mass. 494, 506–507.[2]

The issue before us is whether American, on the facts of this case, is such a supplier entitled to the benefit of the security; or whether, as contended by Innamorati and Hartford, American is only a remote supplier and therefore not entitled to the benefit of the security. See *Claycraft Co.* v. *John Bowen Co.* 287 Mass. 255, 257. When American delivered the equipment in question to Kahn at the job site, and when it filed its notice of claim with the town clerk, it was in the position of a direct supplier to a subcontractor and thus entitled to the benefit of the security. Its equipment, with a minor exception, was ultimately incorporated into the school addition. Did Kahn's bankruptcy after American's complete delivery of all the equipment it contracted to deliver, and the trustee's sale of that equipment as above described abrogate the right which American otherwise had to the security? For the several reasons which follow, we believe it did not.

1. The fact that Kahn was adjudicated a bankrupt and the probability that it received a discharge in bankruptcy would not operate to discharge the liability of either Innamorati or Hartford on the bond in question. The Federal Bankruptcy Act itself makes clear that a discharge in bankruptcy does not relieve a surety of the discharged debtor from liability. 11 U. S. C. § 34 (1964). In such case the creditor may prove his claim against the bankrupt and recover the balance remaining from the surety. *McClintic-Marshall Co.* v. *New Bedford,* 239 Mass. 216, 222–223. *Dominion Culvert & Metal Corp.* v. *United States Fid. & Guar. Co.* 238 S. C. 452, 457. *United States to Use of Gen. Elec. Co.* v. *Schofield Co.* 182 F. 240, 246; affd. sub nom.

---

[2] These and many other decisions on this subject involved G. L. c. 30, § 39, the provisions of which are now included in G. L. c. 149, § 29. See St. 1957, c. 682, accomplishing this change.

*Title Guar. & Surety Co.* v. *United States, to Use of Gen. Elec. Co.* 187 F. 98 (3d Cir.). *Standard Acc. Ins. Co.* v. *Simpson,* 64 F. 2d 583, 589 (4th Cir.). See *Fidelity & Cas. Co.* v. *Lackland,* 175 Va. 178. In any event, Kahn's bankruptcy did not terminate American's status as its creditor, but merely interposed a bar to American's enforcement of its rights as creditor against Kahn.

2. Kahn's failure to perform the subcontract it made with Innamorati does not affect American's right, as a supplier of equipment to Kahn, to the benefit of the bond as security. Under G. L. c. 149, § 29, the liability of Innamorati and Hartford to American is not contingent upon Innamorati's liability to Kahn which purchased from American. *Philip Carey Mfg. Co.* v. *Joseph Rugo, Inc.* 346 Mass. 206, 208. *Milano Bros., Inc.* v. *Joseph Rugo, Inc.* 353 Mass. 767.

3. An examination of the many decisions construing and applying G. L. c. 149, § 29, and the several predecessor statutes now merged therein reveals repeated statements that the statutes were intended to protect laborers and materialmen from nonpayment by contractors and subcontractors engaged in the construction of public buildings or public works. *Nash* v. *Commonwealth,* 182 Mass. 12, 16-17. *Otis Elevator Co.* v. *Long,* 238 Mass. 257, 264. *Massachusetts Gas & Elec. Light Supply Co.* v. *Rugo Constr. Co.* 321 Mass. 20, 22-23. *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 353. *C. C. Smith Co. Inc.* v. *Frankini Constr. Co.* 334 Mass. 379, 385. *Mosaic Tile Co.* v. *Rusco Prod. of Mass. Inc.* 350 Mass. 433, 439. The examination also reveals repeated statements that the statute should be given a broad or liberal construction to accomplish its intended purpose. *C. C. Smith Co. Inc.* v. *Frankini Constr. Co.,* supra. *Mosaic Tile Co.* v. *Rusco Prod. of Mass. Inc.,* supra. *Lawrence Plate & Window Glass Co.* v. *Varrasso Bros. Inc.* 353 Mass. 631, 633. *Warren Bros. Rds. Co.* v. *Joseph Rugo, Inc.* 355 Mass. 382, 386.

Construing G. L. c. 149, § 29, broadly and liberally to the end that it will accomplish its intended purpose we conclude that the security of the bond which was required by the

358 Mass. 146 151

American Air Filter Co. Inc. *v.* Innamorati Bros. Inc.

statute was intended to protect a supplier in the position of American in this case. American, like other suppliers of materials and equipment to contractors and subcontractors on public works, acted with knowledge of, and in reliance upon the security of the bond required by the statute. It was reasonably justified in so doing. It did not require payment at or before delivery, nor did it retain possession, title or any other form of lien in the items sold. Kahn's bankruptcy would appear to be precisely the type of contingency against which the bond was intended to protect its suppliers. It is difficult to perceive what real purpose the statute would serve if it did not cover this situation. The security of the bond is most likely to be needed for the protection and payment of a supplier when the purchasing contractor or subcontractor encounters financial difficulties. We hold on the facts before us that American, the supplier or materialman, having delivered all required materials to the job site, and the materials having been installed or incorporated in the public building with the minor exception of no significance to the result, it is entitled to recovery under G. L. c. 149, § 29, notwithstanding the purchasing subcontractor's bankruptcy and the trustee's sales pursuant thereto, all occurring after delivery of the materials to the job site.

Innamorati and Hartford place great reliance upon a statement of the court in *Nash* v. *Commonwealth*, 182 Mass. 12, 19–20, in arguing that the sales by the trustee to Hampden and LaCentra prevent American from being an immediate supplier and thus bar its recovery. In that case Nash sold a quantity of cement to a subcontractor who became insolvent and abandoned its contract. The contract provided that in such a situation the general contractor had the right to complete the work and charge the expense thereof to the subcontractor, and to use therefor such of the latter's "materials, animals, machinery, implements and tools of every description as may be found upon the line of said work." The general contractor made a settlement with the subcontractor and received from him a bill of sale of the unused portion of the cement then on the job site. The general

contractor then engaged a successor subcontractor to whom it sold the cement, all of which was used in the completion of the public work. The court held that the supplier could recover from the general contractor under the predecessor of the statute involved in the present case. In so doing the court rejected the contention of the general contractor that since he had paid the insolvent subcontractor for the cement, he should not be made to pay for it again to the supplier. The court said that the general contractor knew all of the facts, and that if "he chose to settle in full with . . . [the insolvent subcontractor], he must be held to have done it at his own risk." The court then discussed the bill of sale from the subcontractor to the general contractor and said that "[w]hile the transfer of this cement thus took the form of a sale . . . it is apparent that in substance the transaction was a taking possession of the cement under the contract and a use of it thereunder." The opinion concluded with the following language: "The cement was bought by . . . [the subcontractor] for the aqueduct, it was sold for that purpose, and it had been delivered upon the line of the work and had been accepted by the Commonwealth as suitable. It then came into the hands of . . . [the general contractor] in substance under the right reserved in the very contract by virtue of which . . . [the subcontractor] designated it for the aqueduct, and it went to the . . . [successor subcontractor], through whom, by virtue of . . . [the subcontractor's] contract . . . [the general contractor] had the right to complete the work by contract, and it was finally used in the work. At no time after the delivery was the cement designated for any other purpose, but during the whole time between the delivery and its use it was in the possession of persons whose rights to use it came substantially from . . . [the subcontractor] and were based upon their relation to the work which existed at the time the cement was delivered. *The case differs therefore from that of an independent sale.* Under the circumstances, we think that the petitioner is entitled to the whole of his claim" (emphasis supplied). Innamorati and Hartford rely on the ten

words emphasized above as requiring a decision in their favor. We do not think those words are a holding that a supplier in the position of American in this case may not recover under G. L. c. 149, § 29. It is questionable whether that decision was affected by whether the sale was independent or otherwise. A study of the complete opinion convinces us the words were hardly more than gratuitous. In fact it places great emphasis on the fact that the cement was originally sold by the supplier to the subcontractor with the expectation that it would be used in the aqueduct, that it was delivered to the job site, and that it was actually used in the aqueduct. In that respect it supports the conclusion which we have reached.

4. Innamorati argues that it has already paid LaCentra in full for its labor and materials which included the identical equipment for which American now seeks payment, and that it should not be made to pay twice for the same equipment. This point has already been decided by this court adversely to Innamorati in the *Nash* case, *supra*, at 18. To the same effect, see *Mankin* v. *United States For the Use of Ludowici-Celadon Co.* 215 U. S. 533, 539–540. *Dominion Culvert & Metal Co.* v. *United States Fid. & Guar. Co.*, *supra*, at 457. The mere fact that Innamorati may be exposed to paying twice for the same equipment does not without more bar American from recovery. For example, if a contractor pays his subcontractor in full and the latter does not pay his supplier, the latter may recover under G. L. c. 149, § 29, notwithstanding the prior payment by the contractor to the subcontractor. It was within the power of Innamorati to protect itself against the risk of such double payment. After our 1957 decision in *Poorvu Constr. Co. Inc.* v. *Nelson Elec. Co. Inc.* 335 Mass. 545, holding that the contractor for a public building could not require subcontractors to furnish any performance or payment bond in connection with the construction, the Legislature, by St. 1960, c. 771, amended G. L. c. 149, §§ 44B, 44F, 44G, 44H and 44I, by inserting therein language expressly authorizing the contractor to require subcontractors to furnish him with such performance

and payment bonds, the premiums therefor to be paid by the contractor.[3] The record does not indicate that Innamorati exercised its right to request such a bond from Kahn as security for the latter's payment of its suppliers.

The interlocutory decree is affirmed. The final decree is reversed. A new decree is to be entered in favor of American Air Filter Company, Inc. against Innamorati Brothers, Inc. and the Hartford Accident & Indemnity Company for damages in the amount of $8,658, plus interest thereon at the rate of six per cent per annum from April 14, 1964, with costs of appeal.

*So ordered.*

---

[3] Statute 1960, c. 771, § 6, amended G. L. c. 149, § 44H, by adding thereto the following language: "A performance and payment bond furnished by the subcontractor, at the request of a general contractor set forth in the general bid form, shall be for the benefit of the general contractor; shall secure the performance of the subcontract by the subcontractor; and shall indemnify and hold harmless the general contractor and the surety or sureties under the labor and materials or payment bond furnished by such general contractor to the awarding authority against (1) any and all loss and expense arising out of any and all claims in connection with the performance of said subcontract which would be required to be paid under the labor and materials or payment bond furnished by the general contractor to the awarding authority and (2) attorneys' fees . . . ."