MASSACHUSETTS GAS & ELECTRIC LIGHT SUPPLY CO. *vs.*
RUGO CONSTRUCTION COMPANY, INC., & others.

Suffolk.    January 6, 1947. — February 5, 1947.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Public Works. Municipal Corporations*, Security for public work. *Sale*,
Parties.

Findings by a master, in a suit in equity to enforce security obtained
under G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361,
in favor of a claimant for materials alleged to have been furnished to
a subcontractor in the construction of a public building for a city,
required a conclusion that certain goods, ordered from the claimant
by the subcontractor to be specially fabricated for the work, were
sold by the claimant to the subcontractor although they were manu-
factured for the claimant by a third party who delivered them directly
to the work and billed them to the claimant.

A claimant, who, under two contracts, furnished materials to a sub-
contractor engaged in construction of a public work for a city, one a
special contract for fabricated materials at a stated price and the
other a general contract for such stock pattern supplies as the sub-
contractor might desire for the work, could not maintain a suit in
equity to enforce security obtained under G. L. (Ter. Ed.) c. 149,
§ 29, as appearing in St. 1938, c. 361, as to materials furnished under
the special contract where it appeared that he had not within sixty
days after the last delivery of materials thereunder filed a sworn state-
ment of his claim therefor with the city clerk, irrespective of whether
he had filed a claim covering materials furnished under both contracts
within sixty days after the last delivery of materials under the general
contract.

BILL IN EQUITY, filed in the Superior Court on February
7, 1941.

The suit was heard on a master's report by *Morton*, J.

*J. G. Fay*, (*R. L. Mappleback* with him,) for the defend-
ants Rugo Construction Company, Inc., and another.

*M. E. Schneider*, for the plaintiff.

RONAN, J.    This is a bill in equity by one who had fur-
nished materials to Quinn Brothers Electrical Co., herein-
after referred to as Quinn, a subcontractor, who contracted
on October 24, 1938, with Rugo Construction Company,

Inc., hereinafter called Rugo, to furnish and install the electrical equipment required for an addition to and alterations in a high school building as required by a written contract which Rugo had executed with the city of Malden. The bill seeks to reach the security furnished by a bond, given by Rugo as principal and the three defendant surety companies as sureties, which was conditioned upon the payment of those who furnished labor or materials in the prosecution of this work for the city. . The case was referred to a master, whose report was confirmed. The defendants appealed from a final decree establishing an indebtedness of Quinn to the plaintiff in the amount of $5,826.37, and ordering the remaining defendants to pay to the plaintiff $3,722.29 plus interest from the date of filing of the master's report together with costs.

The plaintiff, a wholesale and retail dealer in electrical supplies in Boston, had for some time prior to the time Quinn was awarded the subcontract in question frequently sold to Quinn electrical supplies from its own stock, which it delivered to Quinn on the sites of various jobs where Quinn was engaged. After Quinn had entered into the contract with Rugo, the plaintiff continued to deal with it in the same manner. The plaintiff furnished supplies to Quinn, some of which were used in the performance of its contract with Rugo and others in the performance of a contract which it had directly with the city of Malden. Under its contract with Rugo, Quinn was required to furnish certain electrical equipment which had to be specially fabricated for this particular job. A salesman for the Wheeler Reflector Company, hereinafter called Wheeler, agreed to manufacture these materials and sell them through a distributor or jobber to Quinn for $5,000. Quinn on November 28, 1938, gave to the plaintiff an order for these materials, and on the same day the plaintiff ordered these goods from Wheeler. From time to time these materials were delivered by Wheeler to the school premises in accordance with certain orders or releases given by the plaintiff to Wheeler. These materials were charged by Wheeler to the plaintiff, who in turn charged and billed them to Quinn after each shipment. Quinn

abandoned its contract with Rugo on March 4, 1940. The last shipment of these materials occurred on December 17, 1939. The balance of this lot was thereafter sold by Wheeler directly to Rugo. The plaintiff filed a sworn statement of its claim on March 13, 1940. It amounted to $4,813.88, and included $870.75 on sales in no way connected with the Malden high school job, and $17,540.30 on sales after November 5, 1938, on all jobs — a total of $18,411.05 less credits of $13,597.17. The master, after applying the credits to the oldest accounts, found that the plaintiff was owed a balance of $11.53 on September 28, 1939, $924.26 for sales of supplies to Quinn after September 28, 1939, which were used on the school job, and $2,342.80 for sales of the specially fabricated materials if they were sold by the plaintiff and not Wheeler. He also found that in addition Quinn was indebted to the plaintiff in the sum of $1,215.75 for supplies that were used on jobs other than the one in question.

The principal question is whether the plaintiff has a right to reach the security for the sale of the goods manufactured by Wheeler. Upon the findings of the master we are satisfied that the seller was the plaintiff and not Wheeler. This lot of goods was the subject of a particular contract separate and distinct from that under which goods out of its own stock were currently sold by the plaintiff to Quinn. The plaintiff agreed to sell the lot for a lump sum, and Quinn agreed to accept and pay this sum for the lot. The plaintiff was supplying material under two different contracts: (1) a definite quantity of a lot specially manufactured for the school job, and (2) such other stock pattern supplies as Quinn might desire to purchase for this job. Our statutes, G. L. (Ter. Ed.) c. 30, § 39, as appearing in St. 1935, c. 472, § 1, and G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, requiring security in favor of those furnishing labor and materials in the construction or repair of public structures and other public works, are an outgrowth of the mechanics' lien statutes, *Friedman* v. *County of Hampden*, 204 Mass. 494; and as there can be no lien upon public buildings or other public works, *Lessard* v. *Revere*, 171 Mass. 294, the laborer or materialman, instead of having a lien

upon the property, has the benefit of the security taken by bond or otherwise by the public contracting party. *Hub Steel & Iron Works, Inc.* v. *Dyer*, 283 Mass. 463, 466. The object of these statutes is to give those furnishing labor and materials "security equivalent to the lien which the law creates upon the property of other owners in like cases." *Burr* v. *Massachusetts School for Feeble-Minded*, 197 Mass. 357, 360. *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 124. Under the statute creating mechanics' liens upon private buildings and land, one furnishing labor or supplying materials under separate and independent contracts and not under such arrangements as would constitute a continuous employment must file a sworn statement within a certain number of days after completion of his work or after the last materials have been furnished by him, G. L. (Ter. Ed.) c. 254, § 8, and he cannot establish a lien under the earlier contract unless the statement is filed within the prescribed period, even if it is filed seasonably with reference to the second contract, *Savoy* v. *Dudley*, 168 Mass. 538, 540, *O'Driscoll* v. *Bradford*, 171 Mass. 231, 97 Am. L. R. 780, compare *Miller* v. *Batchelder*, 117 Mass. 179; and the same rule has been held applicable in petitions against the Commonwealth under G. L. (Ter. Ed.) c. 30, § 39, as amended. *Mario Pandolf Co. Inc.* v. *Commonwealth*, 303 Mass. 251, 255–256. The language of § 39, in so far as material, is substantially similar to that of G. L. (Ter. Ed.) c. 149, § 29, as amended. The bond in the present case was found by the master to have been furnished under G. L. (Ter. Ed.) c. 149, § 29, as amended, and was intended as the security provided for by said section. The result is that the plaintiff cannot reach this security for so much of the lot of specially fabricated materials as was delivered to Quinn, the last of which deliveries occurred more than sixty days prior to the filing of the sworn statement.

The plaintiff points out that the master has found that the plaintiff on March 13, 1940, filed a sworn statement of its claim within sixty days after it ceased to furnish materials, but this finding does not refer to the lot of goods manufactured by Wheeler because the master found "that the

last of the materials furnished on the job by this claimant was on February 19, 1940. The last delivery of Wheeler merchandise was on December 17, 1939, and . . . the later deliveries were so called sundry articles out of Massachusetts Gas & Electric Light Supply Co. stock." This specific finding as to the lot manufactured by Wheeler is decisive that the sworn statement was filed more than sixty days after the last delivery of these goods. *MacLeod* v. *Davis*, 290 Mass. 335, 337, 338. *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 223, 224.

The final contention of the defendants is that the plaintiff should be barred from any relief because it wilfully and knowingly filed a claim substantially in excess of what was owed to it by Quinn both on the running account and on the lot of goods specially manufactured by Wheeler. This would be an absolute defence to a bill brought to enforce a mechanic's lien if proved, and we do not intimate that the same rule would not be applicable upon a bill to reach the security by one who furnished labor or supplied materials for a public building. See G. L. (Ter. Ed.) c. 254, § 11; *Barry* v. *Duffin*, 290 Mass. 398; *Lampasona* v. *Capriotti*, 296 Mass. 34. The master has found, however, upon unreported evidence, that the burden of proving this contention has not been sustained. We see nothing with respect to this finding, either in the report or in the exhibits, that demonstrates any error upon the part of the master.

The final decree is affirmed except as to the fourth paragraph and all the amounts mentioned in said paragraph, except the amount of costs, are struck out and there is to be substituted therefor a sum composed of $935.79 and interest from the date of the filing of the bill of complaint to the date of the filing of the master's report, and this sum together with interest thereon is to be brought down to the date of the new final decree together with costs. The decree is to contain a provision ordering Quinn to pay the two amounts mentioned in the original decree with interest and with costs and that the payment of said sum of $935.79 shall be a discharge to this extent of Quinn's indebtedness.

*So ordered.*