ROBERT PETERS & others, trustees, vs. THE HARTFORD
ACCIDENT AND INDEMNITY COMPANY.

Suffolk. January 3, 1979. — April 19, 1979.

Present: QUIRICO, BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Public Works*, Payment bond.

Under the provisions of G. L. c. 149, § 29, the trustees of employee
fringe benefit funds were entitled to maintain an action against the
general contractor's surety even though the employer primarily
liable for contributions to the funds was a sub-subcontractor and
had no contractual relationship with the contractor principal on
the bond. [866-872]

CIVIL ACTION commenced in the Superior Court on September 23, 1976.

The case was heard by *Lynch*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ira Sills* for the plaintiffs.

*Robert J. Sherer* for the defendant.

LIACOS, J. This case, which arises under G. L. c. 149, § 29, involves the scope of the payment bond which prime contractors are required to provide as surety for work done on public projects. Specifically, we are asked to determine whether the trustees of employee fringe benefit funds may maintain an action[1] against the general con-

---

[1] The pertinent portion of G. L. c. 149, § 29, as amended through St. 1978, c. 155, § 1, states: "Officers or agents contracting in behalf of the commonwealth or in behalf of any county, city, town, district or other political subdivision of the commonwealth or other public instrumentality for the construction, reconstruction, alteration, remodeling, repair or demolition of public buildings or other public works . . . shall obtain security by bond in an amount not less than one

tractor's surety, when the employer primarily liable for contributions to these funds is a "sub-subcontractor."[2] The Superior Court judge granted the defendant surety company's motion to dismiss the complaint for failure to state a claim on which relief may be granted, Mass. R. Civ. P. 12(b)(6), 365 Mass. 754 (1974), "it appearing upon the allegations of the complaint that the plaintiffs have no contractual relationship with either the contractor principal on the bond or a subcontractor and thus are not within the protection of G. L. c. 149, § 29." The plaintiff trustees (trustees)[3] appealed, and we transferred the case here on our own motion. We reverse.

For the purpose of ruling on a motion to dismiss, the allegations of the complaint are to be taken as true. *Lowell Gas Co.* v. *Attorney Gen., ante* 37, 39 (1979). They are essentially as follows. Harvey Construction Co., Inc. (Harvey), was the general contractor on a public works construction project at the Essex Water Pollution Control Plant in Salem, Massachusetts. In accordance with G. L. c. 149, § 29, Harvey as principal and The Hartford Accident and Indemnity Company (Hartford) as surety executed a bond to guarantee the payment of labor, materials, health, welfare, pension and other obligations in-

---

half of the total contract price, for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed therein . . . and for payment by such contractor and subcontractors of any sums due trustees or other persons authorized to collect such payments from the contractor or subcontractors, based upon the labor performed or furnished as aforesaid, for health and welfare plans, supplementary unemployment benefit plans and other fringe benefits which are payable in cash and provided for in collective bargaining agreements between organized labor and the contractor or subcontractors . . . ."

[2] The contractual relationship denoted by the term "sub-subcontractor" has also been referred to as "second-level subcontractor" or "second-tier subcontractor."

[3] The plaintiffs enumerated in the complaint are trustees of the Sheet Metal Workers Local Union No. 17 Pension Fund, Insurance Fund, and Vacation Fund.

curred by Harvey, and its affiliates and subcontractors, on the construction project in question. Harvey, as general contractor, subcontracted with William M. Collins Co., Inc. (Collins), for a portion of the construction work, and Collins, in turn, subcontracted with HEMCO Corporation (HEMCO).[4]

From March, 1975, through October, 1975, HEMCO employed sheet metal workers at the Essex jobsite. Under a collective bargaining agreement between the Sheet Metal Workers Local Union No. 17 and an employer association, HEMCO was obligated to pay over amounts withheld from employees' wages for the union's vacation fund, and to contribute to the union's insurance and pension funds. HEMCO failed to turn over to the union any of these sums.[5] The trustees thereafter sought payment from both Collins and Harvey, sending demand letters which met all the requirements of G. L. c. 149, § 29. When payment was refused, this suit against Hartford was brought in the Superior Court.

We stated in *American Air Filter Co.* v. *Innamorati Bros.*, 358 Mass. 146, 150 (1970), that "[a]n examination of the many decisions construing and applying G. L. c. 149, § 29, and the several predecessor statutes now merged therein reveals repeated statements that the statutes were intended to protect laborers and materialmen from nonpayment by contractors and subcontractors engaged in the construction of public buildings or public works." Hartford contends that through an amendment inserted by St. 1972, c. 774, § 5,[6] the Legislature clearly limited the

---

[4] HEMCO, thus, is the sub-subcontractor with which we are concerned in this case.

[5] The trustees asserted in their complaint that HEMCO owed the Local 17 insurance fund $2,499.16; the Local 17 pension fund $2,179.50; and the Local 17 vacation fund $871.80, all for work performed at the company's Essex Water Pollution Control Plant jobsite. Since the filing of the complaint, however, HEMCO has paid all monies due the Local 17 vacation fund, according to the trustees' brief.

[6] The pertinent portion of G. L. c. 149, § 29, as amended through St.

scope of protection offered by the statute. Specifically, Hartford argues that, by virtue of the amendment, the statute now precludes claims against the surety bond by employees of a sub-subcontractor engaged in work on the project. We disagree with this contention for reasons which follow.

A view of G. L. c. 149, § 29, in its historical perspective is essential to our analysis. As we made clear in *Massachusetts Gas & Elec. Supply Co.* v. *Rugo Constr. Co.*, 321 Mass. 20, 22-23 (1947), the statute[7] is an outgrowth of the mechanics' lien statutes. See *Friedman* v. *County of Hampden*, 204 Mass. 494, 503-508 (1910). Recognizing that a lien in favor of those furnishing labor or materials with respect to public buildings or other public works was unavailable, *Lessard* v. *Revere*, 171 Mass. 294 (1898), we stated that § 29[8] affords these parties the benefit of the security taken by bond or otherwise by the public contracting party. "The object of these statutes is to give those furnishing labor and materials 'security equivalent to the lien which the law creates upon the property of other owners in like cases.' *Burr* v. *Massachusetts School for Feeble-Minded,* 197 Mass. 357, 360 [1908]." *Massachusetts Gas & Elec. Supply Co., supra* at 23.

---

1972, c. 774, § 5, reads: "Any claimant having a contractual relationship with a subcontractor performing labor or both performing labor and furnishing materials pursuant to a contract with the general contractor but no contractual relationship with the contractor principal furnishing the bond shall have the right to enforce any such claim as provided in subparagraphs (a) and (b) of paragraph (2) only if such claimant gives written notice to the contractor principal within sixty-five days after the day on which the claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation included in the paragraphs (1) coverage . . . ."

[7] The decision also refers to G. L. c. 30, § 39, which was repealed by St. 1957, c. 682, § 2. This subject matter of that provision is now embodied in c. 140, § 29.

[8] General Laws c. 149, § 29, has been amended several times since 1947. None of these amendments, however, has altered the essential objectives of the statute as described in *Massachusetts Gas & Elec. Supply Co.* v. *Rugo Constr. Co.,* 321 Mass. 20, 22-23 (1947).

In *Friedman* v. *County of Hampden, supra,* the court surveyed the general lien law of this Commonwealth with respect to the protection granted subcontractors,[9] laborers, and materialmen. "Suffice it to say that a lien is given whether the lienor be the original contractor, a subcontractor of any degree, or simply a laborer or material man. . . . It is necessary only that the work be within the scope of the work called for by the parent contract." *Id.* at 504-505. The court continued, *id.* at 506: "It is to be borne in mind, also, that, whatever may be the distinction in the lien laws of other States between subcontractors on the one hand and laborers and mere material men on the other, in our general lien law, as is above stated, there are no such distinctions, much less are there any between subcontractors of different degrees."[10]

---

[9] A subcontractor, as described in *Friedman* v. *County of Hampden,* 204 Mass. 494, 501-502 (1910), is " 'one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance.' Phillips on Mechanics' Liens, (3d ed.) § 44. In this general sense it is manifest that often, especially in building contracts, there may be a great difference in the remoteness of the subcontracts in their relation to what may be called the original or parent contract. . . . Each is a subcontractor, but there are differences of degree with respect to their remoteness from the parent contract." Under the *Friedman* analysis, then, the term "subcontractor" encompasses as within its scope a "sub-subcontractor." See *Bumb* v. *Petersmith Controls, Inc.,* 377 F.2d 817 (9th Cir. 1967); *Kobayashi* v. *Meehleis Steel Co.,* 28 Colo. App. 327 (1970); *Nash Eng'r Co.* v. *Marcy Realty Corp.,* 222 Ind. 396 (1944).

[10] The breadth of protection afforded by Massachusetts lien law, as construed in *Friedman,* is analogous to that provided in other States. For example, in *Hey Kiley Man, Inc.* v. *Azalea Gardens Apartments,* 333 So. 2d 48, 50 (Fla. Dist. Ct. App. 1976), the court stated: "We therefore read the term 'subcontractor' within the provisions of [Florida's Mechanics' Lien Law] to include anyone not in privity with the owner performing a portion of a contract to enhance realty; and we see no sense in drawing an arbitrary line cutting off would-be lienors, based on degrees of remoteness from privity, assuming the protective notice requirement for perfecting a lien pursuant to [the lien law]." See *Bumb* v. *Petersmith Controls, Inc., supra; South-Way Constr. Co.* v. *Adams City Serv.,* 169 Colo. 513, 516-517 (1969); *J.W.*

Having explored the contours of the general lien law, the *Friedman* court delineated the scope of St. 1878, c. 209, one of the precursors of G. L. c. 149, § 29: "In a word, whoever is a creditor of either the original contractor or of a subcontractor of any degree, for labor performed or furnished, or for materials furnished and actually used in the public work is within the protection of the statute . . . ." *Id.* at 507.[11]

Faced with this pronouncement of the court, left undisturbed for almost seventy years, Hartford takes the position that the Legislature intended to curtail the scope of coverage set forth in *Friedman* through the enactment of the 1972 amendments to G. L. c. 149, § 29. Specifically, Hartford focuses on the following language inserted in the third paragraph of § 29—"Any claimant having a contractual relationship with a subcontractor performing labor or both performing labor and furnishing materials *pursuant to a contract with the general contractor* but no contractual relationship with the contractor principal furnishing the bond shall have the right to enforce any such claim as provided in subparagraphs (a) and (b) of paragraph (2) only if such claimant gives written notice to the contractor principal within sixty-five days" (emphasis supplied)—as demonstrative of the legislative intention that the protections of the statute extended only to employees of subcontractors in direct privity with the general contractor.[12]

---

*Bateson Co.* v. *United States ex rel. Bd. of Trustees*, 434 U.S. 586, 602 (1978) (Stevens, J., dissenting). See generally 53 Am. Jur. 2d Mechanics' Liens § 70 (1970). But see, e.g., *Cameron Equip. Corp.* v. *People*, 27 N.Y.2d 634 (1970).

For an historical overview of lien law in this Commonwealth, see *Friedman* at 503-504. The current version of the lien law, in so far as it is pertinent to the issue before us, is found in G. L. c. 154, § 4.

[11] This statement by the court is consistent with holdings of other courts construing statutes similar to G. L. c. 149, § 29. See, e.g., *Williamson* v. *Williams*, 262 Mich. 401 (1933); *Mississippi Road Supply Co.* v. *Western Cas. & Sur. Co.*, 246 Miss. 510 (1963).

[12] Hartford's position would appear to be bolstered by the Supreme

In declining to accept Hartford's interpretation of the statutory language, we adhere to our oft-repeated determination that G. L. c. 149, § 29, "be given a broad or liberal construction to accomplish its intended purpose." *American Air Filter Co.* v. *Innamorati Bros.*, 358 Mass. 146, 150 (1970).[13] Cf. *M. Lasden, Inc.* v. *Decker Elec. Corp.*, 372 Mass. 179 (1977). The amendment on which Hartford relies is essentially procedural in nature. As we noted in *Manganaro Drywall, Inc.* v. *White Constr. Co.*, 372 Mass. 661, 664 (1977), "The heading of [St. 1972, c. 774, § 5] is instructive in identifying its legislative purpose: 'An Act expediting payments to general contractors and to subcontractors and improving the flow of funds in the construction industry.' " The Legislature is presumed to have been cognizant of the expansive definition of "subcontractor" set forth in such cases as *Friedman* and its progeny. It is unlikely that it intended to implement so substantial a curtailment of statutory protection for laborers and materialmen by virtue of an amendment which describes the notice prerequisites to the filing of a claim on the bond.[14]

Court's recent decision in *J.W. Bateson Co.* v. *United States ex rel. Bd. of Trustees*, 434 U.S. 586 (1978), which interprets the Miller Act, 40 U.S.C. § 270a (1976) (the Federal analog to G. L. c. 149, § 29), as regards the same issue we face in this case. In *Bateson*, a majority of the Court decided that the word "subcontractor" must be limited in meaning to one who contracts with a prime contractor. In reaching a conclusion contrary to that we reach here, however, the Court relied heavily on an arguably ambiguous statement in the committee reports related to the original Miller Act. See *id.* at 591; *id.* at 603-605 (Stevens, J., dissenting). Our examination of the legislative history incident to G. L. c. 149, § 29, uncovers no parallel statement. Further, the Supreme Court rested the *Bateson* holding on its concern for the expectations of parties which, it stated, had been led to assume that the employees of a subcontractor would not be protected by the Miller Act payment bond, based on a "well-settled body" of Federal law. Massachusetts law, in vivid contrast and also arguably "well-settled," points toward the opposite result.

[13] See generally Annot., 92 A.L.R. 2d 1250, 1258 (1963): "It has been held or stated in several cases that the statute and bond are to be liberally construed in favor of the suppliers of labor or materials" (footnotes omitted).

[14] Conceivably, the amendment was also intended to make clear

Significantly, the fundamental statutory language in the first paragraph of § 29, which requires that a bond be secured "for payment by the contractor *and subcontractors* for labor performed or furnished" was left unmodified[15] (emphasis supplied). Had the Legislature wished to abridge the broad definition of "subcontractors," as that term appears in the sections of the first paragraph of § 29 pertinent here, it could easily have done so. See St. 1962, c. 696, which inserted in the first paragraph of G. L. c. 149, § 29, a provision "for payment of transportation charges for materials used or employed therein which are consigned to the contractor or to a *subcontractor who has a direct contractual relationship with the contractor*" (emphasis supplied). Instead, it chose not to tamper with those sections.

We do not construe the words, "[a]ny claimant having a contractual relationship with a *subcontractor performing . . . pursuant to a contract with the general contractor*" (emphasis supplied), as barring all claims against a subcontractor not in direct privity with the general contractor. Contrary to Hartford's assertions, performance "pursuant to a contract" need not imply a relationship of direct privity. Rather, it more generally signifies acts done in accordance with, by reason of, in agreement with, or in the prosecution of, the contract. See *Old Colony*

---

that the employees or materialmen of *material providers*, as contrasted with those of *subcontractors*, were not included within the protection of the statute ("Any claimant having a contractual relationship *with a subcontractor performing labor or both performing labor and furnishing materials . . .*" [emphasis supplied]). Such an interpretation is consistent with the general case law. See *Claycraft Co.* v. *John Bowen Co.*, 287 Mass. 255, 257 (1934); Annot., 92 A.L.R. 2d 1250, 1259 (1963). Cf. *J.W. Bateson Co.* v. *United States ex rel. Bd. of Trustees*, 434 U.S. 586, 604-605 (1978) (Stevens, J., dissenting).

[15] The parallel provision applicable to the case before us, for payment by "such contractor and subcontractors" of any sums due trustees for health and welfare funds, based on labor performed, was likewise unchanged. See note 1 *supra.*

*Trust Co.* v. *Commissioner*, 301 U.S. 379 (1937); *Suppiger* v. *Enking*, 60 Idaho 292 (1939); Black's Law Dictionary 1401 (rev. 4th ed. 1968). Ultimately, a sub-subcontractor who performs a portion of the contract performs it "pursuant to a contract with the general contractor," although his relationship with that contract is indirect. Cf. *J.W. Bateson Co.* v. *United States ex rel. Bd. of Trustees*, 434 U.S. 586, 601-602 n.13 (1978) (Stevens, J., dissenting).

While convinced that the statutory history and language require the result reached in this case, we also find that result to be warranted by a pragmatic analysis. First, we note that a contrary holding, limiting claims to those of laborers and materialmen employed by first-level subcontractors, could make possible an effective subversion of the broadly remedial statutory purpose. By creating "straw" subcontractors, who then contracted with sub-subcontractors for the actual performance of the work (including hiring of laborers and buying materials from materialmen), the general contractor could insulate the surety from § 29 claims on the bond. See *Mississippi Road Supply Co.* v. *Western Cas. & Sur. Co.*, 246 Mass. 510 (1963).

The result we reach does not necessarily impose burdensome liabilities on sureties for a long chain of relationships. General contractors may refuse to deal with subcontractors who do not indemnify them against remote claims, and they may even require a bond from each contractor. "If the prime contractor wants to protect himself against loss caused by subcontractors, he can '*secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. . . .*' *F.D. Rich Co.* v. *Industrial Lumber Co.*, 417 U.S. 116, 123 [1974] . . ., quoting *MacEvoy Co.* v. *United States*, . . . 322 U.S. [102] at 110 [1944] . . . (emphasis by the *Rich* Court). And if he permits subcontractors to further subcontract, such permission can be made contingent on similar security being provided by the sub-subcontractor."

*United States* v. *J.W. Bateson Co.,* 551 F.2d 1284, 1287 (D.C. Cir. 1977) (Wright, J., concurring), rev'd, 434 U.S. 586 (1978). Cf. *American Air Filter Co.* v. *Innamorati Bros.,* 358 Mass. at 153-154; St. 1960, c. 771, § 6, which amended G. L. c. 149, § 44H.

Finally, the result we reach furthers the public policy of ensuring security for all laborers working at a public project site, and thereby promotes the unhampered completion of such projects. We decline to drive "a wedge between employees working side by side on tasks equally vital to 'the prosecution of the work.' " *Bateson,* 434 U.S. at 595 (Stevens, J., dissenting).[16]

The judge's order granting the motion to dismiss is vacated, and the case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

[16] We find further substantiation for our interpretation of the pertinent sections of G. L. c. 149, § 29, in the final paragraph of that statute: "*Any person employing persons* on any public works hereinbefore referred to shall post conspicuously, at such place or places as will provide reasonable opportunity *for all employees* to read the same, a correct copy of this section. The department shall enforce this paragraph" (emphasis supplied). The language here is patently all-inclusive. We think it rather doubtful that the Legislature would require sub-subcontractors to post notices of this statute merely for the purpose of informing their employees that they are ineligible to receive its benefits.