NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

25-P-74                                       Appeals Court

NEW ENGLAND CARPENTERS CENTRAL COLLECTION AGENCY & others[1]  vs. ARCH INSURANCE COMPANY.

No. 25-P-74.

Norfolk.     October 10, 2025. – June 10, 2026.

Present:  Massing, Sacks, & Allen, JJ.

Bond, Public works, Construction contract bond.  Public Works, Payment bond, General contractor.  Surety.  Contract, Collective bargaining contract, Construction contract, Bond, Surety, Public works, Subcontractor, Third-party beneficiary.  Notice, Timeliness.  Statute, Construction. Practice, Civil, Summary judgment.  Words, "Contractual relationship."

Civil action commenced in the Superior Court Department on June 13, 2018.

The case was heard by Beverly J. Cannone, J., on a motion for summary judgment.

Luke Liacos for the plaintiffs.
Mansooruddin Ahmed for Arch Insurance Company.

---

[1] The Trustees of the New England Carpenters Pension Fund; New England Carpenters Guaranteed Annuity Fund; New England Carpenters Health Benefits Fund; New England Carpenters Vacation Savings Fund; and New England Carpenters Training Fund.

ALLEN, J.  This case, arising under G. L. c. 149, § 29, which governs the posting of and collection against security bonds in public construction projects, concerns whether a claimant for unpaid contributions toward employee benefit plans has a "contractual relationship" with the general contractor for the purpose of collecting against the surety.

New England Carpenters Central Collection Agency (NECCCA), together with the trustees for the benefit plans that NECCCA represents (collectively plaintiffs), sought payment from defendant Arch Insurance Company (Arch), the payment bond surety, of delinquent employee benefit plan or "fringe-benefit" contributions that two subcontractors on public construction projects were obligated to pay pursuant to a collective bargaining agreement.  A Superior Court judge allowed Arch's motion for summary judgment, ruling that because the plaintiffs did not have a "contractual relationship" with the project's general contractor, their failure to comply with the notice requirement of G. L. c. 149, § 29, third par., applicable to claimants who have a contractual relationship only with subcontractors and not with the general contractor, precluded recovery under the bond.

We conclude that the plaintiffs were intended third-party beneficiaries of the collective bargaining agreement and, as a result, had a "contractual relationship" with the project's

general contractor within the meaning of the statute; therefore, they were not required to comply with the notice provision. Accordingly, we vacate the grant of summary judgment and remand for further proceedings.

Background. The facts are largely undisputed.[2] CTA Construction Company, Inc. (CTA), a general contractor for public construction projects in Massachusetts, began work on two projects: the Randolph Intergenerational Community Center (Randolph project) and the Dedham Town Hall (Dedham project). In turn, CTA contracted with two subcontractors: Mass Construction & Management, Inc. (Mass Construction) for carpentry work on both projects, and Galaxy Installation Group, Inc. (Galaxy),[3] for carpentry work on the Dedham project.

1. Collective bargaining agreement. At all times relevant to this action, CTA, Mass Construction, and Galaxy were signatories to a collective bargaining agreement (collective bargaining agreement or agreement) with the New England Regional

---

[2] Although the plaintiffs submitted evidence attempting to raise a genuine issue of fact related to the subcontractors' last day of work on one of the projects at issue, the judge properly concluded that such evidence was insufficient to create a genuine dispute. On appeal, the plaintiffs do not challenge the judge's conclusions regarding when work was completed on the projects at issue.

[3] Galaxy is not a party in this case.

Council of Carpenters (union).[4] NECCCA itself is not a signatory, nor are the fringe-benefit fund trustees NECCCA represents. Pursuant to the agreement, however, Mass Construction and Galaxy, as subcontractors (or "Employers," as defined within the agreement), were obligated to make contributions to NECCCA -- the agency designated in the agreement[5] to collect the benefit monies -- on behalf of the carpenters they employed for the projects. In the event of a subcontractor's failure to make contributions, art. 15, § 1, of the collective bargaining agreement provided NECCCA and the union with the following mechanism to collect delinquencies with assistance from the general contractor:

> "Within seven (7) days of learning that an Employer is delinquent in its employee benefit contributions, the Union or the NECCCA shall notify in writing the Employer and the General Contractor[] for whom the Employer is working of the delinquency amount. . . .

> "Upon written notification from . . . [the Union] or the NECCCA that a subcontractor is delinquent in the payment of wages or benefits to the Funds provided for in this Agreement, the general contractor shall assist the Union in collecting those wages and benefit contributions for that specific job to the extent that subcontractor funds are available and in hand. . . .

---

[4] The name of the union has since changed to the North Atlantic States Regional Council of Carpenters.

[5] Article 10, § 3, of the agreement provides that "[t]he parties have established a non-profit agency, the New England Carpenters Central Collection Agency . . . (NECCCA) whose purpose shall be to perform the collection, auditing and related activities for the Funds. The Agency shall be directed equally by the Union and Employer designees."

"The general contractor shall pay subcontractors who are delinquent in the benefit payments on their jobs, by issuing a two-party check to the subcontractor and the NECCCA for any delinquent subcontractor upon request for this procedure from the Union or the NECCCA."

2. General Laws c. 149, § 29. Under G. L. c. 149, § 29, general contractors for a publicly funded construction project must obtain "security by bond . . . for payment of labor performed or furnished" on the project. Given the unavailability of mechanic's liens to secure payment on public construction projects, see Lessard v. Revere, 171 Mass. 294, 294-295 (1898), § 29 affords claimants the benefit of the security bond, see City Rentals, LLC v. BBC Co., 79 Mass. App. Ct. 559, 564 (2011). Section 29 also sets forth the procedure under which claimants may seek recovery of contributions owed to them. Claimants, as described by the statute, are those entitled to obtain "the benefit of such bond for any amount claimed due and unpaid at any time." G. L. c. 149, § 29. Although § 29 provides for claims by a project's laborers and materialmen, it also expressly extends security to entities like the plaintiffs

"for payment . . . of any sums due [to] trustees or other persons authorized to collect such payments . . . for health and welfare plans, . . . and other fringe benefits which are payable in cash and provided for in collective bargaining agreements between organized labor and the contractor or subcontractors."

Here, CTA, as general contractor for both projects, obtained a payment bond pursuant to § 29 from Arch.

Under § 29, the procedure through which a claimant collects under the bond differs depending on whether its "contractual relationship" is with the project's general contractor or only with a subcontractor to the project. If the claimant has a "contractual relationship" with the general contractor, no written notice of the claim is required, and enforcement may be accomplished by filing a complaint in Superior Court within one year after the day on which the claimant last provided the materials or services. See G. L. c. 149, § 29, second par. Conversely, if the claimant has a "contractual relationship" with a subcontractor, but not with the general contractor, written notice of the claim must be provided to the general contractor "within sixty-five days after the day on which the claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation" before the claimant may proceed with an enforcement action in the Superior Court (emphasis added). G. L. c. 149, § 29, third par.

3. Subcontractor delinquencies and NECCCA's claims for recovery. On August 22, 2017, NECCCA provided written notice to CTA of its claim against Mass Construction maintaining that Mass Construction failed to make contributions required by the collective bargaining agreement on behalf of the carpenters it

employed on both projects.[6]  Mass Construction's final day of work on the Randolph project was August 24, 2017, and its final day of work on the Dedham project was September 1, 2017.

On April 4, 2018, NECCCA provided written notice to CTA of its claim against Galaxy for unpaid contributions on the Dedham project.  NECCCA maintained that Galaxy failed to make contributions for the Dedham project from January of 2017 to April of 2018.  Galaxy's final day of work was April 30, 2018.

Arch declined to make any payments to NECCCA.  Thereafter, on June 13, 2018, NECCCA and the other plaintiffs filed the present action asserting that, pursuant to § 29, NECCCA was entitled to recover from Arch the unpaid employee benefit fund contributions owed for work performed on both projects.  Arch moved for summary judgment, contending that NECCCA's written notices were sent to CTA prematurely -- that is, prior to Mass Construction and Galaxy's final days of work on the projects -- and that without strict compliance with § 29, no payment was due. At the motion hearing, NECCCA's counsel emphasized the distinction between the benefit funds -- which, having no direct access to jobsite information, rely on reports and other

---

[6] Specifically, the plaintiffs assert in their brief that Mass Construction was delinquent on contributions for work performed from September 2016 to July of 2017 on the Dedham project, and for work performed from April 2017 to July 2017 on the Randolph project.

documentation from the contractor for notification of the last day of work and contributions due -- and other, more typical claimants (such as subcontractors or laborers), who have direct access to the ongoing operations of a project, and thus, are better positioned to recognize when work on a project has been completed so as to permit compliance with § 29's notice requirement.

After the hearing, a judge allowed Arch's motion for summary judgment. The judge ruled that the plaintiffs, despite being third-party beneficiaries of the collective bargaining agreement between CTA and the union, were not "parties" to the agreements and had no "contractual relationship" with CTA; therefore, they were required under § 29 to provide written notice to CTA within sixty-five days after Mass Construction's and Galaxy's final days of work. The judge concluded that, because NECCCA provided written notice <u>prior</u> to the completion of work on the construction projects, the notice was defective,[7]

---

[7] As noted by the judge, the Supreme Judicial Court has strictly enforced the notice requirements of § 29 and analogous statutes where claimants have provided notice prematurely. See, e.g., <u>International Heating & Air Conditioning Corp</u>. v. <u>Rich Constr. Co</u>., 372 Mass. 134, 137 (1977); <u>C. C. Smith Co</u>. v. <u>Frankini Constr. Co</u>., 334 Mass. 379, 383 (1956); <u>International Bus. Machs. Corp</u>. v. <u>Quinn Bros. Elec. Co</u>., 321 Mass. 16, 17-19 (1947); <u>Mario Pandolf Co</u>. v. <u>Commonwealth</u>, 303 Mass. 251, 256-257 (1939).

Additionally, in <u>N-Tek Constr. Servs., Inc</u>. v. <u>Hartford Fire Ins. Co</u>., 89 Mass. App. Ct. 186, 193 (2016), we noted that

and NECCCA was not entitled to payments from Arch as a matter of law.[8]  This appeal followed.

Discussion.  1.  Standard of review.  "We review the grant of summary judgment de novo."  Masonic Temple Ass'n of Quincy, Inc. v. Patel, 489 Mass. 549, 553 (2022).  We employ the familiar standard of review, "whether, viewing the evidence in the light most favorable to the nonmoving party, the moving

_____

§ 29's "notice requirement bolsters the legislative policy to protect the general contractor, by requiring the claimant's writing to serve as a presentation of a claim against the general contractor."  See Barboza v. Aetna Cas. & Sur. Co., 18 Mass. App. Ct. 323, 328 (1984) (finding it "ill serves the statutory scheme . . . and would stimulate litigation, if we obscured the relatively simple statutory prerequisites upon which all parties in public contracting, including the sureties, presumably rely").

[8] In closing her decision, the judge thoughtfully expressed dismay at the apparent unfairness of the result:

"[A]lthough the evidence and case law compel this conclusion, [the court] is troubled by the result. . . . [R]equiring employee benefit funds trustees or other persons authorized to collect such payments to comply with the same notice provisions as contractors, who have unfettered access to relevant jobsite information, does not appear to effectuate the purpose of the statute and may incentivize contractors to keep such person in the dark about the status of a job in order to insulate the surety from claims on the bond under G. L. c. 149, § 29.  Indeed, it is apparent from the summary judgment record here that the plaintiffs were relatively in the dark about the status of the work on the various projects and received job information from the contractors themselves.  However, in the absence of guidance from the Legislature or a direct holding on this point, the Court is compelled to allow summary judgment in favor of Arch."

party is entitled to judgment as a matter of law."  See Meyer v. Veolia Energy N. Am., 482 Mass. 208, 211 (2019).  "The proper construction of a statute is a question of law."  Lanctot v. Brewster, 102 Mass. App. Ct. 739, 741 (2023).  Because here, the judge's decision was based on undisputed facts and her interpretation of § 29, this case is "especially suited for summary disposition and de novo review" (citation omitted).  Id.

The dispute in this case turns on whether a "contractual relationship" existed between general contractor CTA and the fringe benefit funds represented by NECCCA.  As noted above, the judge found that the plaintiffs occupied "the position of third-party beneficiaries" of the collective bargaining agreement between CTA and the union.[9]  The plaintiffs argue that such a position constitutes a "contractual relationship" to CTA under

---

[9] As referenced by the judge, several Federal courts have concluded that employee benefit funds are third-party beneficiaries of collective bargaining agreements between a union and employers.  See e.g., Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990), cert. denied, 498 U.S. 982 ("The Funds occupy the position of a third party beneficiary of the collective bargaining agreement"); Malden Mills Indus., Inc. v. ILGWU Nat'l Retirement Fund, 766 F. Supp. 1202, 1210 (D. Mass. 1991) (Fund is "third-party beneficiary of the collective bargaining agreement" where "the fund receives contributions and makes payments based upon the terms negotiated by others, namely, the union and the employer").

§ 29, and thus, § 29's notice requirement was inapplicable to them.[10]  We agree.

2.  Third-party beneficiary.  We agree with the judge's conclusion that the plaintiffs are third-party beneficiaries of the collective bargaining agreement.  Significantly, we further conclude, based on the plain language of the collective bargaining agreement, bolstered by § 29, that the plaintiffs are intended third-party beneficiaries to the agreement.[11]  As we explain, because the plaintiffs are intended third-party beneficiaries of the collective bargaining agreement, they have a "contractual relationship" with CTA, and thus, § 29's notice requirement does not apply to them.

Under the Restatement (Second) of Contracts § 302 (1981), adopted by our appellate cases, see, e.g., Miller v. Mooney, 431 Mass. 57, 62 (2000), "a beneficiary of a promise is an intended

---

[10] The plaintiffs argue alternatively that, regardless of the relationship that existed between themselves and CTA, they were not required to comply with § 29's notice requirement because the statute does not require multiemployer benefit funds to provide written notice as a prerequisite to filing suit. Given our decision, we need not address this argument.

[11] Section 29 reflects the Legislature's expectation that trustees like the plaintiffs will benefit from the payment bond; it states that "security by bond . . . [shall be] for payment by such contractor and subcontractors of any sums due trustees or other persons authorized to collect such payments . . . for [furnishing benefits] provided for in collective bargaining agreements between organized labor and the contractor or subcontractors."

beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."[12]  The intent of the parties to the contract "determines whether a third party is an incidental or intended beneficiary."  Markel Serv. Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. 401, 405 (1988).  "We look at the language and circumstances of the contract for indicia of intention."  Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997).

As noted above, art. 15, § 1, of the collective bargaining agreement specified CTA's obligations to NECCCA in the event of a subcontractor's delinquency.  Upon notice from the union, or NECCCA itself, given within seven days of a subcontractor's delinquency, CTA was required to assist the union in collecting

---

[12] Restatement (Second) of Contracts § 302, set forth in full, provides:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.  (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

the delinquent contributions from the subcontractors. Additionally, if requested by the union or NECCCA, CTA was obligated to pay any delinquent subcontractor with a two-party check made payable to the delinquent subcontractor and NECCCA.

Viewing the plain language of art. 15, § 1, we are persuaded that the plaintiffs were intended third-party beneficiaries of the collective bargaining agreement, and not just incidental beneficiaries, as CTA contends.  See James Family Charitable Found. v. State St. Bank & Trust Co., 80 Mass. App. Ct. 720, 725 (2011) ("One need not be a beneficiary of every provision of the contract in order to be an intended beneficiary with enforceable rights; it is enough to be the intended beneficiary of the promise one is seeking to enforce"). Contained in art. 15, § 1, is a promise that CTA will utilize procedures that directly benefit NECCCA and the trustees it represents, to wit, possibly agreeing to be responsible for delinquent funds, affirmatively assisting in collecting the delinquency, and using two-party checks to pay future benefits. See Restatement (Second) of Contracts § 302(1)(b) (1981) ("the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance").  Cf. FloorPro, Inc. v. United States, 98 Fed. Cl. 144, 148-149 (2011), vacated and remanded on other grounds, 680 F.3d 1377 (Fed. Cir. 2012) (finding subcontractor was intended third-party

beneficiary to modified contract wherein government agreed to issue two-party check to prime contractor and subcontractor).

3.  Contractual relationship.  Having concluded that the plaintiffs are intended third-party beneficiaries of the collective bargaining agreement, we next determine whether that position creates a "contractual relationship" between NECCCA and CTA under § 29.  Because the term "contractual relationship" is not defined within G. L. c. 149, § 29, "we give [the words] their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose."  Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  Moreover, "[w]e interpret a statute according to the intent of the Legislature, which we ascertain from all the statute's words, construed by the ordinary and approved usage of the language and considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (quotation and citation omitted).  Meyer v. Veolia Energy N. Am., 482 Mass. 208, 211 (2019).

Where the language of a statute is "clear and unambiguous," the plain meaning of the language must be given effect, as the principal insight into legislative intent (citation omitted). See Cohen v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 409 (1996), cert. denied sub nom. Kokoska v. Bullen, 519 U.S. 1057 (1997).  See also Commonwealth v. Meta Platforms,

Inc., 497 Mass. 384, 397 (2026). The plain meaning of words is to be derived from "their use in other legal contexts and dictionary definitions." Zone Book, Inc., 372 Mass. at 369.

"A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 454 (2004), quoting from Restatement (Second) of Contracts § 1 (1981). See also Black's Law Dictionary 404 (12th ed. 2024) (defining "contract" as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law"). As defined by Black's Law Dictionary, "relationship" describes "[t]he nature of the association between two or more people; [especially], a legally recognized association that makes a difference in the participants' legal rights and duties of care." Id. at 1544.

Applying these definitions, we conclude that the plaintiffs had a "contractual relationship" with CTA. As discussed above, art. 15, § 1, conferred certain rights on NECCCA -- the standing and right to notify CTA directly upon a subcontractor's delinquency, the right to demand performance by CTA, and the right to demand future payment through the issuance of a two-party check -- which, in turn, obligated CTA to, at the very least, steward payment of delinquent contributions to the

plaintiffs under the agreement.  Put differently, upon the plaintiffs' invocation of their rights by notifying CTA of a subcontractor's delinquency, CTA was <u>required</u> to (1) assist the union in collecting payments, or (2) issue a two-party check to the plaintiffs and subcontractor.  It is readily apparent that the intended goal of these provisions was to require CTA to play a role in ensuring that the plaintiffs received the payments due to them under the collective bargaining agreement.

Additionally, it is relevant that the Legislature used the phrase "contractual relationship" and did not use the words "contract" or "privity," or the term "direct contract," or make specific reference to a construction contract to describe the relationship between a claimant and general contractor under § 29.  See G. L. c. 149, § 29 ("<u>any</u> claimant having a <u>contractual relationship</u> with the contractor principal furnishing the bond" [emphasis added]).  Rather, by using "any claimant" and "contractual relationship" the Legislature seemingly contemplated a broader group of claimants, like the plaintiffs here, who, despite not being parties to the contract with either the general contractor or subcontractor, are intended beneficiaries of promises contained in contracts between such parties and a labor union.

Further, our conclusion is consistent with our courts' oft-repeated determination that G. L. c. 149, § 29, "be given a

broad or liberal construction to accomplish its intended purpose." American Air Filter Co. v. Innamorati Bros., 358 Mass. 146, 150 (1970).  Cf. M. Lasden, Inc. v. Decker Elec. Corp., 372 Mass. 179, 183 (1977).  It is well-settled that "Section 29 . . . is a remedial law intended to protect laborers and material suppliers from nonpayment by contractors and subcontractors involved in the construction or repair of public buildings and public works."  N-Tek Constr. Servs., Inc. v. Hartford Fire Ins. Co., 89 Mass. App. Ct. 186, 190 (2016).  See Massachusetts Gas & Elec. Light Supply Co. v. Rugo Constr. Co., 321 Mass. 20, 23 (1947), quoting Burr v. Massachusetts Sch. for the Feeble-Minded, 197 Mass. 357, 360 (1908) ("The object of [§ 29] is to give those furnishing labor and materials 'security equivalent to the lien which the law creates upon the property of other owners in like cases'").  Thus, it follows that a liberal interpretation of § 29's remedial purpose would recognize the plaintiffs, as representatives of funds designed to secure benefits for a project's workers, as having a contractual relationship to the general contractor who was contractually obligated to assist in collecting the payment of such benefits.  Cf. Psy-Ed Corp. v. Klein, 459 Mass. 697, 708 (2011) (concluding that, in light of G. L. c. 151B's remedial purpose, it would be error to impose "current employee" as modifier where statute addresses action taken by "any person"

against "another person" and statutory language does not require limitation).   To conclude otherwise, that is, to construe § 29's notice requirement in a manner that limits trustees of benefit funds in collecting important kinds of compensation under the statute when these trustees often have limited access to relevant jobsite information, would be inconsistent with the statute's remedial nature and intent to "improv[e] the flow of funds in the construction industry."  Manganaro Drywall, Inc. v. White Constr. Co., 372 Mass. 661, 664 (1977), quoting St. 1972, c. 774, § 5.

Because the plaintiffs had a "contractual relationship" with the general contractor (here, CTA) within the meaning of § 29, we conclude that the plaintiffs were not required to follow the § 29 notice procedure for claimants that have contractual relationships only with subcontractors.  Therefore, that the plaintiffs nevertheless chose to provide written notice to CTA, yet did so earlier than § 29 envisions, does not affect the validity of their claims.[13]  It was sufficient, for § 29 purposes, that the plaintiffs filed this Superior Court action within § 29's one-year period for doing so.

---

[13] We distinguish here between the notice to the contractor required by § 29, which we conclude was not required in this instance, and the notice to the contractor (as employers) required by art. 15, § 1, of the collective bargaining agreement, the giving of which is not disputed.

Lastly, we note that the decision in Peters v. Hartford Acc. & Indem. Co., 377 Mass. 863 (1979), on which Arch relies, is not contrary to our conclusion. In Peters, supra at 865-866, the Supreme Judicial Court was asked to determine whether trustees of an employee benefit fund could maintain an action against a surety pursuant to § 29, where a "sub-subcontractor" was delinquent in making contributions to the trustees. The surety argued that, because the liable party was a sub-subcontractor, and thus not in direct privity with the general contractor, the statute foreclosed the plaintiffs from bringing a claim, as the express language of the statute mentions only claimants that have a contractual relationship to either a subcontractor or general contractor. Id. at 865-866. The court disagreed, reasoning that such a limitation was incompatible with § 29's intent, legislative history, and pragmatic considerations.[14] See id. at 869-872.

Arch's argument that the court in Peters provided the plaintiffs with an "exact road map . . . to correctly make a

_____

[14] We note that the Supreme Judicial Court's interpretation of § 29 in Peters departed from the United States Supreme Court's interpretation of the Miller Act, 40 U.S.C. § 270a (the predecessor to 40 U.S.C. § 3131, the current Federal analog to G. L. c. 149, § 29) in applying § 29's protections to those having a contractual relationship to sub-subcontractors. See J. W. Bateson Co. v. United States, 434 U.S. 586, 589-594 (1978) (interpreting Miller Act to be inapplicable to "sub-subcontractors" based on legislative history). See also Peters, 377 Mass. at 868 n.12 (discussing J. W. Bateson Co., supra).

claim and pursue recovery under [§ 29]" misses the mark. Although the plaintiff trustees in Peters provided the general contractor and subcontractor with written notice of the sub-subcontractor's delinquency "which met all the requirements of" § 29, the court addressed not how those requirements applied to the trustees, but only whether the plaintiffs could bring the claim at all where sub-subcontractors were delinquent.  See id. at 865, 869-872.  Thus, we do not read Peters to require claimants to comply with § 29's notice requirement, where, as here, the claimants maintained a "contractual relationship" recognized in § 29 with the general contractor via a collective bargaining agreement.

In sum, where the plaintiffs and CTA had a contractual relationship arising out of the collective bargaining agreement of which the plaintiffs were intended third-party beneficiaries, no written notice of their claims was required under § 29. Accordingly, we vacate the entry of summary judgment and remand for further proceedings consistent with this opinion.

So ordered.